### A09A1047. MOORE v. THE STATE.
(687 SE2d 259)

ADAMS, Judge.

Chastin Moore was convicted by a jury of aggravated assault, kidnapping, aggravated sexual battery, aggravated sodomy, terroristic threats and robbery. He appeals following the denial of his motion, as amended, for new trial.

Construed to support the jury's verdict, the evidence adduced at trial showed the following: On the date of the incident, the victim in this case was headed home at about 4:00 a.m. after going out with friends for the evening. She stopped at a convenience store and while she was pumping gas, a man driving a green Chevy Tahoe,[1] subsequently identified as Moore, yelled at her through his passenger side window that "he liked what he saw." He then asked her if she wanted to get together and when she declined, offered her money. She told him she had a boyfriend and that she just wanted to go home.

The victim went inside the convenience store and paid for her gas. Moore was still there when she came out, and the victim testified that she was a little nervous he would try to follow her. However, it looked like Moore was leaving and that he was going in the opposite direction of where she was headed so the victim left the parking lot. The victim's route home was on Highway 56 through a rural area where, at that time of the morning, there was no traffic and the road was dark. After a while, the victim noticed car lights behind her and then saw that it was the same green vehicle that she had seen at the convenience store. She first tried to call a friend, and then 911 but lost the signal before she could tell them her location. She then reached her ex-mother-in-law, with whom she was living at the time, and frantically told her that she was being followed.

Meanwhile, Moore was blinking his lights at her and tapping her rear bumper. He finally came up beside her and ran her off the road. She stopped and Moore stopped his car in front of her. Moore, whom she recognized from the convenience store, approached the victim's car; when he saw she was trying to call someone, grabbed her phone

---

[1] The victim testified the vehicle was a Chevy Suburban, but subsequent testimony clarified that the vehicle was a Chevy Tahoe.

from her and threw it into the road. He then demanded money, and the victim told him she did not have any money. Moore pulled the victim out of her car and told her, "well, you're going to suck my dick or die, one." Moore then dragged the victim by her arm down into a ditch and forced his penis into her mouth. He had taken off her clothes and put his finger in her vagina while forcing her to commit oral sodomy. After he ejaculated in the victim's mouth, he walked back to her car to get her purse, telling the victim to stay where she was. But he could not find her purse, so the victim walked to the car to give it to him. He then took her purse and told the victim, who still did not have on any clothes, to leave. The victim drove home and was interviewed by police and taken to the hospital.

The victim subsequently identified Moore from a photographic lineup and at trial. The victim's clothes were also found at the crime scene. Evidence was presented that Moore's fingerprints matched prints taken from the victim's vehicle. DNA evidence obtained from swabs from the victim's mouth also implicated Moore.

Similar transaction evidence was also presented.[2] One witness testified that she was driving to work in the early morning hours of July 7, 2004, three days after the Burke County incident, when a car with its lights flashing came quickly up behind her. She stopped to let the car pass, and the driver stopped and told her that her back light and brake light were out. The driver offered to help her check it out but then he put his hand, which he held in the shape of a gun, inside her window, forcing her to keep it open, and told her that it was a robbery and for her to give him all her money. The witness struggled to roll up her window and the driver kept telling her to roll the window down and to open the door. The witness testified he became more and more agitated and was basically out of control by the time she was able to get the car into gear and moving. The witness left in her vehicle and the man got back in his car and pursued her until she turned into the emergency room parking lot of the hospital where she worked. The witness subsequently identified Moore from a photographic lineup as being the man who stopped and tried to rob her that night. She also identified Moore at trial.

Another similar transaction witness testified that she was driving back from her boyfriend's house in the early morning hours of July 7, 2004 when she noticed a car pull in behind her. She described the road on which she was traveling as "empty." She said the car began to tailgate her and flash its lights. The witness was very frightened and called her boyfriend and told him she was not going

---

[2] The incident in this case occurred in Burke County. The similar transactions occurred in nearby Columbia and Richmond Counties.

home yet. The driver kept following her through her neighborhood, flashing his lights, honking the horn and tailgating her. The witness left her neighborhood and the car continued to pursue her, attempting to pull around her and run her off the road. The witness put on her brakes and slammed to a stop and the car pulled in front of her, stopping so she would run into the back of him. However, the witness "hit" the gas and was able to speed around the car, although the driver took back up the chase, continuing to tailgate her with flashing lights. The witness continued driving to an area where it would be likely she would encounter other people and she pulled into a convenience store parking lot when she saw a police car there. The car that had been chasing her kept on driving. She could not identify the driver but was able to describe the vehicle as an older model dark color Chevrolet with a square front.

A third similar transaction witness, who was on active duty with the United States Army, testified that she was leaving a friend's house in the early morning hours of July 7, 2004 because she had to report for PT at 4:30 a.m. As the road she was traveling went from four lanes to two, another vehicle got behind her and then the driver started flashing his high beams. She kept driving, but the car came up beside her; the driver was waving his arms, trying to get her to pull over to the side of the road. She kept going, and the car came up again and tried to run her off the road. She slammed on her brakes and the car got in front of her and turned sideways, trying to block the road. She pulled around him and kept going. She also called 911 and was on the phone with the dispatcher when her pursuer finally caused her to lose control of her vehicle and flip several times, hitting a telephone pole. When she got out of her vehicle, she noticed he was still sitting there so she ran to a nearby house and called 911. She described the vehicle that chased her as a dark Chevy SUV and also provided a physical description of her pursuer.

Because of the 911 call that the witness made, police were dispatched to the vicinity. A vehicle matching the description the witness provided was spotted by police and a high speed chase ensued, with speeds reaching over 100 miles per hour. They came into a neighborhood and Moore jumped out of his vehicle and tried to flee on foot. Officers pursued Moore and he was apprehended.

Moore testified at trial and denied involvement in the crimes, although he admitted he tried to elude police on July 7 but said that he did so because he was recently out of prison, did not have a driver's license and had contraband in the car. Moore also presented an alibi defense through the testimony of several witnesses who testified that Moore was with them in the early morning hours on the date of the crime in this case.

1. Moore first contends that the trial judge violated OCGA §

17-8-57 by improperly commenting on the evidence, arguing in essence that the trial court showed favoritism toward the State in its presentation of the case. As examples, Moore cites to the record where the trial court suggested how certain exhibits be marked so that the jury would not be confused by having them in a "pile of ten" and that he instructed that certain items be shown to a witness so she could testify about them. The trial judge also sought to clarify the introduction of another exhibit on one occasion, "Is this the same evidence that the lady gave?" Moore also points to the fact that, after the State indicated it might need to recall a witness, the trial judge informed a witness, "You can be excused. Come back tomorrow, I guess." And Moore contends the trial court showed prejudice toward his case as demonstrated by the judge stating to his trial counsel "Tell the bailiff. I can't tell him; you tell him" and then explaining that it was not the clerk's job.[3]

However, OCGA § 17-8-57 does not prohibit the trial judge from taking such measures as necessary to ensure the orderly administration of the trial, and the court may even propound questions to a witness to clarify testimony when necessary in order to enforce its duty to ensure a fair trial. Simply put, we do not view the trial court's actions or remarks in this case as amounting to an expression of opinion with regard to Moore's guilt or innocence or to what had or had not been proven at trial in violation of OCGA § 17-8-57. E.g., *Salazar v. State*, 256 Ga. App. 50, 52 (3) (567 SE2d 706) (2002).

Additionally, Moore contends that the trial court's charge to the jury on similar transaction evidence impermissibly commented on the evidence. Although the trial judge first referred to the "perpetrator of the crime," he quickly corrected it to state *"alleged* crime charged in this case now on trial"; likewise when, during the same charge, he referred to the "perpetrator" of the crime charged in this case, he immediately corrected himself to say "alleged perpetrator." These slips of the tongue, quickly corrected, afford no basis for reversal. "A mere verbal inaccuracy resulting from a slip of the tongue which does not clearly mislead or confuse the jury is not reversible error." (Citation and punctuation omitted.) *Davenport v. State*, 283 Ga. 171, 172 (4) (656 SE2d 844) (2008). *Williams v. State*, 267 Ga. 771, 773 (2) (a) (482 SE2d 288) (1997); *Siegel v. State*, 206 Ga. 252, 254 (2) (56 SE2d 512) (1949).

---

[3] Moore omits the trial court's severe admonishment of the prosecution for ending the trial a day early because it had no more witnesses to present. Although this exchange was not in front of the jury, it belies Moore's argument concerning the trial court's favoring the prosecution over the defense since the judge instructed the prosecution that if this occurred again, it would not allow the State to put up any more evidence after that point, needless to say a severe penalty.

2. Moore next contends the trial court erred by not declaring, sua sponte, a mistrial after the prosecuting attorney tried to introduce evidence of an alibi notice Moore had submitted in a case pending in another county arising out of a similar transaction. The transcript shows that Moore's trial counsel objected to the admission of this evidence and that the trial court sustained the objection. However, trial counsel did not ask for curative instructions or move for a mistrial and the trial court did not at that time instruct the jury that it should disregard the remarks of the prosecutor concerning the contents of the notice.

> The decision whether to grant a mistrial lies within the trial court's discretion and must be based upon a consideration of the surrounding circumstances in their totality. *Messer v. State*, 247 Ga. 316, 324 (6) (276 SE2d 15) (1981); *Putnam v. State*, 245 Ga. App. 95, 97 (537 SE2d 384) (2000). "A trial court is required to act sua sponte only if there is a manifest necessity for a mistrial." (Citation omitted.) *Wright v. State*, 276 Ga. 419, 420 (2) (577 SE2d 782) (2003). "And manifest necessity requires urgent circumstances." (Citation omitted.) *McGee v. State*, 287 Ga. App. 839, 841 (1) (652 SE2d 822) (2007). Moreover, a trial court's decision whether to grant a mistrial based upon manifest necessity is entitled to great deference. *Putnam v. State*, 245 Ga. App. at 96. This "(d)eference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights." (Citation and punctuation omitted.) Id. at 97.

*Cox v. State*, 293 Ga. App. 98, 102 (3) (666 SE2d 379) (2008).

By the prosecutor's own statements, this notice was filed by Moore's attorney and was not a direct statement made by Moore in the other case in contradiction of testimony or evidence presented in this case. Moreover, the discussion about the notice was brief in the context of the trial, with the trial court quickly sustaining the objection to the admission of the notice. Thus, the focus on this statement in the context of the whole trial was minimal. And the trial court did subsequently instruct the jury that the statements of counsel were not evidence. Thus, considering the circumstances of this case, we cannot say that a mistrial was demanded, even if trial counsel had requested one. Since no manifest necessity for a mistrial has been demonstrated here, the trial court was not required to declare a mistrial sua sponte and this enumeration thus affords no basis for reversal.

3. Moore next contends that the trial court erred in admitting evidence of similar transactions, contending in essence that while the evidence was admitted to show course of conduct, the "real reason" the State sought to have the evidence admitted was to establish identity.

First we note that this issue has been waived for appellate review by Moore's failure to object to this evidence at trial. Although Moore's counsel opposed the introduction of the evidence at the pretrial hearing on its admissibility, he did not pose any objection when the evidence was introduced at trial, as he was required to do to preserve this issue for appellate consideration. E.g., *Dixon v. State*, 285 Ga. 312, 317 (4) (677 SE2d 76) (2009); *Drake v. State*, 274 Ga. App. 882, 883 (2) (619 SE2d 380) (2005). "The rule requiring a trial objection on similar transaction evidence is firm in Georgia jurisprudence, and we are bound to follow it. Consequently, [Moore's] failure to object to the similar transaction evidence at trial waived further review of the issue." (Citation, punctuation and footnote omitted.) *Drake*, 274 Ga. App. at 883 (2).

Moreover, even if one or more of the similar transactions were improperly admitted, given the overwhelming evidence of Moore's guilt on the tried offenses, including the victim's positive identification of Moore as her attacker, as well as the fingerprint and DNA evidence and other evidence admitted at trial, we find "it is highly unlikely that the admission of the similar transaction evidence contributed to the verdict. Any error in admitting such evidence, therefore, was harmless and does not require reversal." (Punctuation and footnote omitted.) *Nesbitt v. State*, 296 Ga. App. 139, 140 (1) (673 SE2d 652) (2009).

4. Moore next contends that the trial court gave an improper instruction on similar transaction evidence. However, as noted in Division 1, the trial court's mere slip of the tongue during that charge, quickly corrected, affords no basis for reversal. Moreover, the trial court clearly and repeatedly instructed the jury that the evidence was being admitted to establish course of conduct and Moore's contention that the trial court's slip of the tongue resulted in the jury considering the evidence for an expanded purpose is unavailing. *Glass v. State*, 255 Ga. App. 390, 394-395 (3) (565 SE2d 500) (2002). Lastly, "[a]s discussed above, however, it is highly unlikely that the admission of the similar transaction evidence impacted the verdict. We thus fail to see how any error in the limiting instruction contributed to the judgment or harmed [Moore]." *Nesbitt*, 296 Ga. App. at 140 (2).

5. Moore next contends that the trial court improperly admitted evidence of the pretrial photographic lineup that was displayed to the victim, noting that "trial counsel pointed out at the [m]otion to

[s]uppress [hearing] that [Moore] was one of the men who were not clean shaven in the photo lineup when the witness said that he was clean shaven" and that on cross-examination during the hearing an investigator admitted that eyewitness identification is unreliable.[4] However, in denying the motion to suppress, the trial court found that the identification procedure was not impermissibly suggestive, and Moore has not challenged that ruling by arguing or attempting to show otherwise.

> On appeal, we will reverse a conviction based on a pretrial photo identification if the photographic lineup was so impermissibly suggestive that there exists a very substantial likelihood of irreparable misidentification. An identification procedure is impermissibly suggestive only if it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "This is our suspect."

*Price v. State*, 289 Ga. App. 763, 766 (2) (658 SE2d 382) (2008). "Unless the evidence demands a finding contrary to a judge's determination, we will not reverse a ruling denying a motion to suppress. [Cit.]" *Jackson v. State*, 288 Ga. App. 339, 345 (3) (654 SE2d 137) (2007). We discern no error in the admission of this evidence. This enumeration is thus without merit.

6. Moore next challenges the effectiveness of his trial counsel. Although Moore sets forth a long list of acts and omissions which he contends constituted deficient performance on the part of trial counsel, for the most part Moore does not link these deficiencies with any particular prejudice to his defense, arguing instead that under *Schofield v. Holsey*, 281 Ga. 809 (642 SE2d 56) (2007), the cumulative effect of these errors resulted in the necessary showing of prejudice. For the reasons that follow, we disagree.

" 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' [Cit.]" *Allen v. State*, 286 Ga. App. 469, 474 (2) (a) (649 SE2d 583) (2007).

As stated in *Schofield*:

> To prevail on his claims, [Moore] must show that his trial counsel rendered constitutionally-deficient performance and

---

[4] Actually what the witness admitted was that *he had heard statements* to the effect that eyewitness identification is unreliable.

that actual prejudice resulted. In order to find actual prejudice, this Court must conclude that "there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

(Citations and footnote omitted.) Id. at 811-812 (II).

As our Supreme Court further explained:

The Supreme Court of the United States has held that it is the prejudice arising from "counsel's errors" that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum. Accordingly, the cases in which the Court of Appeals has held that the cumulative effect of counselor's errors should not be considered are disapproved. Although the combined effects of trial counsel's errors should be considered together as one issue, it remains the case that "(t)his State does not recognize the cumulative error rule." [Cit.]

(Citations omitted.) *Schofield*, 281 Ga. at 812 (II), n. 1.

As a starting point, we note that many of the instances of alleged deficient performance of this case, such as the alleged failure to properly or "ardently" examine witnesses, failure to make certain objections, failure to elicit certain testimony and the failure to request certain charges fall under the heading of trial strategy and generally will not support a claim for ineffective assistance of counsel.[5] *Wilburn v. State*, 278 Ga. App. 76, 78 (2) (b) (628 SE2d 174) (2006); *Williams v. State*, 262 Ga. App. 698, 700 (2) (588 SE2d 755) (2003).

Moreover, since we have determined that a mistrial was not warranted on account of the prosecutor's attempt to admit evidence of Moore's alibi notice in another prosecution, Moore's contention that his counsel should have made such a motion likewise fails as a basis for his ineffective claim.

Although Moore also challenges his counsel's failure to object to the similar transaction evidence at the hearing and at trial, he does not enumerate what specific objection counsel should have made.

YALE LAW LIBRARY

---

[5] At the hearing on the motion for new trial, Moore simply elicited testimony from trial counsel agreeing that he did not pose certain objections, raise certain issues, ask certain questions or request particular charges. Generally he did not query counsel about the basis for his actions (or nonactions). On further examination, the State elicited testimony that these were matters of trial strategy.

"But as we have already found, any error in the admission of this evidence or the court's instruction was harmless. [Moore] thus cannot demonstrate prejudice." *Nesbitt*, 296 Ga. App. at 141 (3) (a).

Moore also contends counsel rendered deficient representation because he failed to pursue a motion to suppress on the fingerprint evidence. But Moore has made no attempt to show this motion would have been successful. "[Moore] bears the burden of establishing that he was prejudiced by his attorney's failure to file a motion to suppress. To do so, he must 'make a strong showing that if trial counsel had made a motion to suppress, the damaging evidence would have been suppressed.' " (Footnote omitted.) *Hubbard v. State*, 285 Ga. App. 450, 451 (1) (646 SE2d 520) (2007). The same reasoning applies to his contention that counsel should have filed a motion to sever certain of the charges — he has made no attempt to make a "strong showing" that such a motion would have succeeded. And although Moore contends his counsel's performance at the motion to suppress hearing on the photographic lineup was deficient because he failed to call certain witnesses and failed to make certain objections, as held in Division 5, we discern no error in the admission of this evidence and Moore has not made a strong showing that the evidence would have been suppressed if trial counsel conducted the hearing in the manner he now proposes.

As the State characterizes, we agree that Moore's claims of ineffectiveness are basically unsubstantiated conclusions. "Mere speculation will not support a claim of ineffective assistance of counsel." *Banta v. State*, 282 Ga. 392, 399 (6) (e) (651 SE2d 21) (2007). The trial court did not err by denying Moore's motion for new trial on the ground of ineffective assistance of counsel.

7. (a) Moore argues that, based on the testimony of his alibi witnesses, the evidence was insufficient. But it was for the jury, not this court, to resolve inconsistencies and conflicts in the evidence, including the testimony of the witnesses, which it did adversely to Moore. " 'As for the believability of [Moore's] alibi evidence and the credibility of the witnesses, those were matters to be resolved by the . . . factfinder.'. . . *Shepherd v. State*, 245 Ga. App. 386, 387 (1) (537 SE2d 777) (2000). This court addresses only the sufficiency of the evidence, not its weight." *Winkfield v. State*, 275 Ga. App. 456, 458 (1) (620 SE2d 670) (2005). The evidence presented in this case as to the charges for aggravated assault, aggravated sexual battery, aggravated sodomy, terroristic threats and robbery was more than sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(b) Moore contends his conviction for kidnapping must be reversed under the test adopted by our Supreme Court in *Garza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008), because there was

no showing of asportation. Under that test, four factors are assessed:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

Id.

> The test is to assist in determining whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.

*Brower v. State*, 298 Ga. App. 699, 706-707 (2) (680 SE2d 859) (2009), quoting *Garza* at 702.

Because this case was tried before *Garza* was decided, the evidence on this issue is not extensive or well-developed and the State does not point to any specific evidence to support the asportation element and concedes that reversal of this conviction might be required.[6] The victim's testimony was that after she was forced off the road, Moore pulled her out of her vehicle and she was standing out by the driver's side of her vehicle. After she informed him she did not have any money, he threatened her and forced her into a ditch and forced her to commit oral sodomy. It thus appears that the movement here was minimal in duration and was clearly done in commission of the other offenses. Further, because the crime occurred beside a dark and deserted rural road in the middle of the night, we cannot say that moving her into a ditch to perpetrate the sexual assault significantly increased the danger to her. Accordingly, Moore's conviction for kidnapping must be reversed. E.g., *Grimes v. State*, 297 Ga. App. 720, 721 (678 SE2d 167) (2009); *Crawford v. State*, 297 Ga. App. 187, 190 (1) (b) (676 SE2d 843) (2009); *Rayshad v. State*, 295 Ga. App. 29, 33-34 (1) (b) (670 SE2d 849) (2008); compare *Henderson v. State*, 285 Ga. 240, 244-245 (5) (675 SE2d 28) (2009); *Flores v. State*, 298 Ga. App. 574, 575 (1) (680 SE2d 609) (2009); *Verdree v. State*, 299 Ga. App. 673 (683 SE2d 632) (2009).

---

[6] The State also acknowledges that newly amended OCGA § 16-5-40, which only applies to crimes committed on or after its effective date of July 1, 2009, does not apply here.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Doyle, J., concur.*

DECIDED NOVEMBER 20, 2009 —

*Katherine M. Mason*, for appellant.
*Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.