## A10A1933. KIRT v. THE STATE.
(709 SE2d 840)

ADAMS, Judge.

After a jury trial, Michael James Kirt was convicted of kidnapping (Count 1), false imprisonment (Count 2), criminal attempt to commit child molestation (Count 3), aggravated assault (Count 4), simple assault, as a lesser included offense of aggravated assault with intent to rape (Count 5), cruelty to children (Count 6), possession of a weapon on school property (Count 7), and on six counts of possession of a knife during the commission of a felony (Counts 8 through 13). Kirt was sentenced to life in prison plus 80 years to serve consecutively. On appeal, Kirt asserts five enumerations of error: (1) the evidence was insufficient to support the asportation element of the kidnapping conviction; (2) the sentences on Counts 9 through 13 are void because there was only one victim; (3) Count 3 of the indictment failed to allege a substantial step related to the attempted child molestation charge; (4) his conviction on Count 6 must be reversed because there was no evidence that he intended to cause the victim excessive mental pain, or in the alternative, Count 6 should have been merged with Count 2 or 4; and (5) the trial court's instruction concerning the asportation element of kidnapping was harmful error. We reverse the conviction of kidnapping, reverse the judgment and sentences imposed on Counts 10, 11, and 13, and remand for resentencing.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence."[1] So viewed, the evidence shows that on March 1, 2007, Kirt entered Clarke Middle School in Athens, Georgia at approximately 10:08 a.m., as evidenced by photographs taken by the school's surveillance cameras. Kirt was wearing a button-down shirt, jeans, and running shoes and carried a bag. Kirt entered the school office, then the teacher's lounge, but when he emerged from the lounge, he was wearing a jacket with a hood that covered his face. According to the video surveillance tapes, Kirt entered the girls' bathroom at 10:16 a.m.

At 10:30 a.m., 12-year-old H. G. entered the bathroom. H. G. testified that she used the restroom, then opened the door of the stall to exit and wash her hands when Kirt ran into the stall. H. G. further testified that she started screaming; that Kirt held a knife and a roll of duct tape but set the knife down on the trash can in the stall as he tried to quiet her down; that she continued to scream; that Kirt

---

[1] (Citation and punctuation omitted.) *Hyde v. State*, 291 Ga. App. 662 (662 SE2d 764) (2008).

grabbed her shoulders and pushed her back into the stall; that Kirt unsuccessfully tried to get a piece of duct tape off the roll; and that Kirt then picked up the knife again. H. G. recalled that Rosemary Salter, a counselor at the school, entered the bathroom, and Kirt ran out.

D. C., also a student at the school, testified that she heard someone screaming about a knife and ran into the bathroom; that she pushed against the door of a stall that was locked; that she looked through the cracks in the door and saw H. G. in the corner of the stall; that H. G. was crying and appeared to be afraid; that Kirt's back was to her but she could see him fumbling with something; and that Kirt was wearing a hood. D. C. further testified that she ran from the bathroom, screamed for help, and told Salter what she had seen. Another student, J. P., testified that she ran into the bathroom after D. C. and saw her look through the cracks of the stall; that when Kirt exited the bathroom, he was wearing a hood; and that she and D. C. ran when Kirt stopped and looked at them.

Salter testified that she heard a disturbance in the hallway and that three girls standing near the girls' bathroom told her there was a man in the bathroom with a knife; that she entered the bathroom, and H. G. darted around the corner and whispered "he has a knife"; and that Kirt then bolted between them and ran out of the bathroom. Salter observed that he was pulling a hood over his face and appeared to be clutching his pants, which were below his buttocks. Salter chased Kirt and yelled "stop," alerting other individuals in the school who also pursued Kirt. Salter returned to the main office with H. G., who appeared ashen, pale, and scared, and clutched her hands toward her body. In the meantime, school officials chased Kirt through the building to Alps Road Elementary School, which was next door, and cornered him. William Miller, one of the officials who chased Kirt, testified that he saw the duct tape and the knife, then grabbed Kirt from behind and took him down.

Officer Marshall Brizendine of the Athens-Clarke County Police Department testified that when he arrested Kirt at Alps Road Elementary School, Kirt had a bag in his possession, which contained, among other things, a roll of duct tape, a digital camera, and a wet t-shirt. Brizendine recovered Kirt's black pocketknife from one of the school officials. Kirt told Brizendine that he went into the school to get out of the rain and to use the bathroom; that he and a girl exited bathroom stalls simultaneously; and that the girl began to "flip the f-ck out" and to scream. Kirt maintained that he did not try to harm anyone.

The police located Kirt's vehicle, which they towed from the site. A search of Kirt's vehicle revealed a CD that contained sexually explicit material including images of nude, young girls and a DVD

entitled "Petite and Sweet." On the DVD were various clips including two young women posing as young school girls having a lesbian encounter, a young woman acting like a young girl eating candy and being seduced by an older man, and a young woman in pigtails wearing a cheerleading outfit who strips and then enters a jacuzzi with an older man.

1. In two enumerations of error, Kirt argues that the evidence was insufficient to support the asportation element of kidnapping and that the trial court's instruction regarding asportation was erroneous. We agree with the first point, which renders the second point moot.

The evidence of the victim's movement comes solely from her. She was in a typical bathroom stall, not a handicap stall, and a picture shows the door opens inward. She testified she unlatched and opened the door to the stall in order to leave. At that moment she was either "kind of towards the side of the toilet" or in front of the toilet. As she opened the door, a man walked in and she started screaming, which she continued to do the entire time over the assailant's indications to be quiet. When the man entered, he had a roll of duct tape in one hand and a knife in the other. Either during or right before pushing the victim, he put the knife on top of a trash can in the back left corner of the stall. The man then "pushed [her] shoulders back" with both hands. After the push, she wound up "[o]n the right side of the toilet," or "in the corner." He then tried to get a piece of duct tape off the roll, but he was unsuccessful and picked up the knife again. According to the victim, the man never got far into the stall or moved further inward once in. There is no other testimony about the victim's movement inside the stall. Although the victim testified that the man never locked the door, D. C. testified that when she responded to the screams, she found the door locked and saw the victim in the back right corner of the stall. Salter or others then came in, and the man ran out. As he did, his pants, including the belt, were completely below his buttocks; his gait was altered; and he was trying to pull up his pants.

As stated by the Supreme Court, given that the only difference between kidnapping and false imprisonment is asportation, "an expansive construction of asportation . . . effectively eviscerates the distinction between [the two crimes]." *Garza v. State*, 284 Ga. 696, 701 (670 SE2d 73) (2008).[2] Accordingly, the court adopted four

---

[2] The decision in *Garza* is applicable even though it was issued after this case was tried. *Garza* itself reversed on sufficiency grounds. And although the kidnapping statute was amended by the Georgia legislature after *Garza*, see OCGA § 16-5-40, the amendment applies to crimes committed on or after July 1, 2009. Id.

factors for determining whether movement constitutes asportation:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

Id. at 702.

Considering those factors, it is apparent that the movement had extremely short duration — a push of at most three or four feet. Second, the movement occurred during at least three separate offenses — false imprisonment, criminal attempt to commit child molestation, and cruelty to a child; the aggravated assault with an intent to rape arguably ended when Kirt put the knife down. These factors weigh against finding asportation.

Third, the movement could be a part of criminal attempt to commit child molestation or cruelty to a child because the push preceded trying to remove a piece of duct tape, which could be used to bind or gag the victim as part of his effort to molest the child. The movement could also be part of the false imprisonment. It may be that the push was not, however, an *inherent* part of these offenses, as articulated by *Garza*. The trial court reasoned that "[p]hysically and forcefully pushing the child back into the stall enclosure and attempting to bind or gag her was not an inherent part of the aggravated assault or false imprisonment." It does not appear, however, that the trial court considered whether the push could be part of the child offenses. Although it is conceivable that Kirt was preparing to kidnap the child and take her somewhere else, there is no additional evidence to support that theory. All in all, the third factor does not weigh in favor of a finding of asportation.

Fourth, we cannot conclude that the push presented a significant danger to the victim independent of the fact that a man with a knife and duct tape was already in the stall blocking a sixth-grade girl from leaving. She could be heard screaming from either position, and, in fact, her screams brought help. With regard to asportation, this factor is inconclusive.

Most cases finding *Garza*-asportation involve a much more significant movement with a more significant increase in danger to the victim independent of the separate offenses. In *Bryant v. State*,[3] the defendant was convicted of (relevant to this issue) armed

---

[3] 304 Ga. App. 755 (1) (697 SE2d 860) (2010).

robbery, aggravated assault, and kidnapping. The defendant had grabbed a child in his backyard, shoved a metal object in his back, threatened to shoot, and then made the child go into the house to get money. This Court held that there was asportation sufficient to support kidnapping because the movement from the open backyard into the house "placed the boy in additional danger by isolating him from rescue and exercising further control over him."[4]

Conversely, in *Moore v. State*,[5] this Court reversed a conviction for kidnapping due to lack of evidence of asportation. There, the defendant forced the victim's car off the road at 4:00 a.m. on a dark rural road, demanded money, pulled her out of her car, and threatened her in order to receive oral sex. He then dragged her into the ditch to perform the act. The Court analyzed the *Garza* factors to conclude there was insufficient evidence of asportation even for the move from beside the car to the ditch:

> [T]he movement here was minimal in duration and was clearly done in commission of the other offenses. Further, because the crime occurred beside a dark and deserted rural road in the middle of the night, we cannot say that moving her into a ditch to perpetrate the sexual assault significantly increased the danger to her.[6]

In *Escoffier v. State*,[7] the defendant, using a knife, "ordered the victim from the driver's seat to the passenger seat so that he could get in the car and steal it; thus, the victim's movement occurred during the commission of the separate offense of hijacking a motor vehicle." This Court found that the short and brief movement did not create a significant danger independent of the separate offenses.[8] Finally, other cases find that movements larger than the push at issue here did not amount to asportation under *Garza*.[9]

In this case, the victim was not moved from one area to another,

---

[4] Id. at 757 (1).

[5] 301 Ga. App. 220 (687 SE2d 259) (2009).

[6] Id. at 229 (7) (b).

[7] 303 Ga. App. 317, 318 (693 SE2d 569) (2010).

[8] Id. See also *Rayshad v. State*, 295 Ga. App. 29, 33-34 (1) (b) (670 SE2d 849) (2008) (reversing one of two kidnapping convictions where there was no evidence that "movements enhanced significantly the risk she was already facing during the commission of these crimes").

[9] See, e.g., *Grimes v. State*, 297 Ga. App. 720 (678 SE2d 167) (2009) (defendant forced victim into an office to unlock cabinet then out of office to cash register to open it); *In the Interest of A. B.*, 296 Ga. App. 350 (674 SE2d 401) (2009) (defendant struck victim on the head, dragged her into neighbor's yard, and took her purse; movement into neighbor's yard "did not significantly endanger the victim independently of the purse snatching and aggravated assault").

or even from outside the stall to inside the stall. The four *Garza* factors were designed to show

> whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.[10]

Here, almost nothing changed with regard to the child's isolation or potential rescue as a result of the push. Thus, examination of the *Garza* factors does not show that the victim was moved in a way sufficient to establish asportation and, consequently, kidnapping. That conviction must be reversed.

2. In his second enumerated error, Kirt argues that the trial court unlawfully sentenced him on Count 10 (possession of a knife during the commission of the felony of criminal attempt to commit child molestation), Count 11 (possession of a knife during the commission of the felony of aggravated assault), and Count 13 (possession of a knife during the commission of the felony of cruelty to children in the first degree) because there was only one victim.[11] "[W]here multiple crimes are committed together during the course of one continuous crime spree, a defendant may be convicted once for possession of a firearm during the commission of a crime as to every individual victim of the crime spree."[12] The State concedes that the sentences on Counts 10, 11, and 13 should have merged with Count 8 (possession of a knife during the commission of the felony of kidnapping). We agree. Therefore, the convictions and sentences imposed on Counts 10, 11, and 13 are vacated; the sentence on Count 8 is vacated, and the case is remanded for resentencing on Count 8.[13]

3. Kirt next argues that his conviction for criminal attempt to commit child molestation (Count 3) must be set aside because the indictment failed to allege the performance of a substantial step

---

[10] *Garza*, 284 Ga. at 702.

[11] In his enumerated error, Kirt argues that he was unlawfully sentenced on Counts 9 and 12 as well, but he acknowledges in a footnote in his appellate brief that the trial court merged those counts with Count 8.

[12] *State v. Marlowe*, 277 Ga. 383, 386 (2) (c) (589 SE2d 69) (2003).

[13] *Garrett v. State*, 306 Ga. App. 420, 422 (b) (703 SE2d 666) (2010) ("See *Coleman v. State*, 286 Ga. 291, 295 (3) (687 SE2d 427) (2009) (same remedy); *Taylor v. State*, 304 Ga. App. 395, 399 (1) (696 SE2d 686) (2010) (vacating conviction and sentence); *Williams v. State*, 287 Ga. 192 (695 SE2d 244) (2010) (claim that conviction merged is a claim challenging conviction not just sentence).").

toward the commission of the crime.[14] But Kirt did not file a timely special demurrer to the indictment or a timely motion in arrest of judgment; therefore, he has waived any claim, such as this, that could have been raised via special or general demurrer.[15]

4. In Kirt's final enumeration of error, he argues that his conviction on Count 6, which charged him with cruelty to children in the first degree, must be reversed because there is no evidence that he intended to cause the victim excessive mental pain. Alternatively, Kirt maintains, his conviction on Count 6 should have been merged with his conviction for either aggravated assault or false imprisonment. We find no error.

Pursuant to OCGA § 16-5-70 (b), "[a]ny person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."

> For purposes of this Code section, malice in the legal sense, imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense. Intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. Consequently, the question of a defendant's mental state and whether the children experienced cruel or excessive physical or mental pain are reserved for the jury.[16]

Unless clearly erroneous, the jury's findings on the question of intent will be affirmed on appeal.[17]

Here, the evidence showed that Kirt hid in the girls' bathroom with a knife, duct tape, and a camera, lay in wait for a young lady to

---

[14] Count 3 charged that Kirt

did attempt to commit the crime of Child Molestation, OCGA § 16-6-4, in that the said accused did perform an act constituting a substantial step toward the commission of said crime with the intent to commit child molestation; said act being that said accused did enter Clarke Middle School, go into a girls' restroom in said school with a knife, duct tape and a camera on his person, and detain [H. G.], a child under the age of fourteen years; in violation of OCGA § 16-4-1 and § 16-6-4.

[15] OCGA §§ 17-1-110; 17-9-61 (b); *Thompson v. State*, 286 Ga. 889, 890 (2) (692 SE2d 379) (2010).

[16] (Punctuation and footnotes omitted.) *Garrett v. State*, 300 Ga. App. 391, 393-394 (685 SE2d 355) (2009).

[17] Id. at 394.

come in, and then held 12-year-old H. G. in a bathroom stall against her will as she screamed continuously for help, during which time he tried to tear off a piece of duct tape and held a knife. A jury could infer from this evidence that Kirt maliciously intended to cause H. G. cruel and excessive mental pain. Accordingly, Kirt's argument fails.

Kirt's alternative argument, that the cruelty to children charge should have been merged with the aggravated assault or false imprisonment charge, reflects a misunderstanding of the law of merger. Under *Drinkard v. Walker*,[18] relied upon by Kirt, "the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[19] Neither aggravated assault nor false imprisonment requires proof that the victim suffered cruel or excessive physical or mental pain. Accordingly, Kirt's conviction for cruelty to children in the first degree does not merge with aggravated assault or false imprisonment.

*Judgment affirmed in part and reversed in part, sentence vacated in part, and case remanded for resentencing. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 22, 2011 —
RECONSIDERATION DENIED APRIL 12, 2011 — 

*Brian Steel*, for appellant.
*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney*, for appellee.

---

[18] 281 Ga. 211 (636 SE2d 530) (2006).
[19] (Punctuation and footnote omitted.) Id. at 215.