**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 27, 2012**

# In the Court of Appeals of Georgia

A12A1492. BOYNTON v. THE STATE.                    JE-057

ELLINGTON, Chief Judge.

A Muscogee County jury found Richard Boynton (hereinafter "the defendant") guilty of seven counts of armed robbery, OCGA § 16-8-41 (a); one count of aggravated assault, OCGA § 16-5-21 (a) (1); one count of burglary, OCGA § 16-7-1 (b); and one count of possession of a firearm during the commission of a crime against another, OCGA § 16-11-106 (b) (1). The defendant appeals from the denial of his motion for a new trial. He contends that the trial court erred in admitting similar transaction evidence and that his trial counsel was ineffective. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows the following facts: on September 17, 2008, Gary Trawick, Carl Ingram, Charles Kostelac, and others were playing cards at Trawick's house in Columbus. As Ingram opened the front door to leave the game, he heard a man outside say "give me your money." The man, later identified as the defendant, then hit him on the head with a gun. Immediately after that the defendant, his cousin Raimone Boynton, Dominic Tinch, and Nigel Towler entered the house. All wore hats, gloves, and bandannas to conceal their identities. At one point, the defendant held the gun about a foot and a half away from Ingram's head and threatened to "make an example" of him. Tinch placed the victims' wallets and other belongings, including Kostelac's Razor cell phone that had a University of Georgia "G" on the cover, in a bag. The defendant was the last to leave the house. Trawick observed the men run into an open field on the other side of the house before he called the police.

Not present at the robbery, but instrumental to its execution, was Patrick Satterfield.[2] Satterfield knew that Trawick held a card game at his house every

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] In exchange for lesser sentences both Tinch and Satterfield pled guilty before the trial and testified for the State about planning and executing the robbery.

Wednesday night, and mentioned this to both Towler and defendant. The defendant said that the house "should be a pretty good lick." Satterfield helped the men execute the robbery, driving around the neighborhood with Tinch and discussing with the defendant and his cousin about how the men would escape the house after the robbery. Raimone Boynton drove the men close to the house , where they went to a dead-end, crossed a ditch, and entered Trawick's house. After the robbery, the men ran back across the ditch, into the car, and went to Tinch's house. The defendant then called Satterfield to let him know that he, his cousin, Towler, and Tinch had robbed the house. The defendant gave Tinch $600, which Tinch gave to Satterfield as a reward for informing him and the other robbers about the house.

During an investigation into the robbery, officers learned that the defendant had told a man, Demarco Jones, that he had participated in the robbery. According to Jones, the defendant got from the robbery a red or orange cell phone with a University of Georgia "G" on it, wallets, and a bag full of money. Based on this information and other leads, the Columbus Police Department arrested the defendant, Towler, Tinch, Satterfield, and Raimone Boynton, and the State jointly indicted them for the crimes. Satterfield , Tinch , and Raimone Boynton pled guilty at the beginning of the trial, leaving only Towler and the defendant to proceed to jury trial.

In addition to the above evidence, the State proffered as a similar transaction evidence that, on November 23, 2008, the defendant and another man tried to force their way into the apartment of a woman in Columbus. As the woman started to leave her apartment she heard a knock on the door. She opened the door, and a masked man pointed a gun at her chest, trying to force his way into the apartment. The victim screamed and closed the door on the gunman's arm. She heard another man tell the gunman that they needed to escape. After the men fled, the victim called the police and said that she saw the men leave in a red car with a tan convertible top. She said the gunman was wearing a black mask, a black jacket with a hood, blue shorts, gloves, and white tennis shoes, and carrying a black bag on his back.

A few hours later, a Columbus Police Department officer stopped a red convertible that matched the victim's description. The defendant was driving the car, and as the officer approached, he noticed the defendant moving his hands around the floorboard, as if searching for something. The officer drew his weapon and detained the defendant and two other suspects in the car until other officers arrived. The officer later discovered a loaded .38 caliber pistol on the floorboard of the car. The similar transaction victim testified at trial that the pistol was similar to the pistol the robber pointed at her.

4

At the time of his arrest, the defendant's hair appeared to be matted as if he had something pressed against his head, and he was wearing blue basketball shorts and a white T-shirt. In the convertible was a white and blue baseball cap, a ski mask, and a black "doo rag," as well as a black sports tote bag, fitting the description the similar transaction victim gave. There were black gloves in the map compartment and a black hooded jacket in the trunk. The State was able to introduce all facts about this case except the conviction.

1. In two related claims of error, the defendant contends the trial court erred in admitting the similar transaction evidence. First, he contends the similarities between the attempted robbery and the robbery at Trawick's house were neither sufficiently numerous nor distinct enough to earmark them as the handiwork of the defendant, and should not have been introduced as similar transaction evidence to show modus operandi. Secondly, he contends the trial court erred in admitting the similar transaction evidence to show course of conduct, arguing that there was no logical connection between the attempted robbery and the Trawick robbery.

> In general, evidence of independent offenses committed by a defendant is irrelevant and inadmissible in a trial for a different crime. In some cases, however, evidence of similar crimes (or transactions), is admissible where its relevance to show identity, motive, plan, scheme, bent of mind and course of conduct, outweighs its prejudicial impact.

Before evidence of prior crimes is admissible, the trial court must determine that the State has affirmatively shown that: (1) the State seeks to admit evidence of the independent offenses or acts for an appropriate purpose; (2) there is sufficient evidence that the accused committed the independent offenses or acts; and (3) there is sufficient connection or similarity between the independent offenses or acts and the crimes charged so that proof of the former tends to prove the latter.

(Citations and punctuation omitted.) *Pareja v. State*, 286 Ga. 117, 119 (686 SE2d 232) (2009). "[T]he decision to admit similar transaction evidence which satisfies the three-prong test is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." (Citation omitted.) *Flowers v. State*, 269 Ga. App. 443, 444 (1) (604 SE2d 285) (2004).

"A transaction does not have to mirror every detail in order to authorize its admission; rather, the proper focus is upon the similarities between the incidents and not upon the differences." (Citation and punctuation omitted.) *Collum v. State*, 281 Ga. 719, 723 (4) (642 SE2d 640) (2007). The similarities between both the attempted robbery and the Trawick robbery are that, in both cases, the defendant was (1) entering another's residence (2) in Columbus (3) through force (4) while the residence was occupied, (5) armed with a gun and (6) concealing his face and hands, (7) with at least one other conspirator, and (8) using an automobile close to the scene of each incident as a getaway car. Furthermore, for similar transactions the law requires *either*

6

a sufficient connection *or* similarity between two events. See *Beck v. State*, 291 Ga. App. 702, 703 (662 SE2d 798) (2008) (holding that when two crimes are essentially dissimilar, one crime may be admitted as a similar transaction at the trial on the other if the State is able to show a logical connection between the crimes). Regardless of whether the attempted robbery was logically connected to the Trawick robbery, there were eight, distinct similarities between the two. Thus, the trial court was authorized to find that the evidence of the defendant's participation in the November 2008 attempted robbery tended to prove that he also committed the Trawick robbery, and was admissible to prove his course of conduct and modus operandi.

2. The defendant contends his counsel was ineffective in several respects: he failed to object to the admission of the similar transaction, failed to object when the State introduced into evidence a picture of the defendant in shackles, and failed to object when the court stated during its jury charge that, "in this case, the [similar transaction] evidence was offered to prove bent of mind and course of conduct of the defendant," contending that bent of mind was not one of the purposes for which the trial court had admitted the similar transaction evidence.[3]

---

[3] The defendant also enumerates as error that his counsel referred to him and his co-defendants as "bad boys" during closing argument. The text of the closing argument, however, was not included in the record. Therefore, this enumeration of

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable and professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003).

(a) The defendant contends that his counsel was ineffective because he failed to object to the trial court's admission of similar transaction evidence for the purpose of showing course of conduct and modus operandi. The record, however, does not support this claim of error. "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (541 SE2d 369) (2001). The defendant's counsel first objected during the pretrial hearing to introduce the similar transaction evidence. In response, the trial court limited the similar

_____

error is deemed abandoned. "We may not consider on appeal evidence that is not included in the record sent from the trial court." (Citation omitted.) *Mitchell v. State*, 242 Ga. App. 177, 183 (6) (529 SE2d 169) (2000).

transaction evidence to show course of conduct and modus operandi, noting that the defendant was identified later in the attempted robbery when the police officer stopped him as he was driving the car, and that his clothes and gear at the time of the arrest matched the victim's description. During the trial the defendant's counsel again objected to similar transaction evidence admission on general grounds. The court overruled the objection. Thus, we cannot say that the defendant's counsel failed to make an objection to the court's admission of similar transaction evidence for the purpose of showing course of conduct and modus operandi.

(b) The defendant contends his counsel was ineffective because he failed to object to the State introducing into evidence a picture of him in shackles, which was taken immediately after his arrest for the attempted armed robbery. This contention lacks merit, however, as "the circumstances connected with a defendant's arrest are considered proper evidence to be submitted to the jury . . . ." *Knowles v. State*, 245 Ga. App. 523, 525 (5) (538 SE2d 175) (2000) (holding that the trial court did not err in admitting a photo of defendant standing by his truck in handcuffs during his arrest). During the testimony of the officer who arrested the defendant after the attempted armed robbery, the State showed the officer a picture of the defendant. The officer noted that the defendant was wearing blue basketball shorts and a white T-shirt,

9

matching the victim's description of the gunman's clothing. Thus, the trial court did not err in admitting the picture that was taken moments after his arrest in a crime submitted as similar transaction evidence, his attorney was not ineffective for failing to object, and we cannot say that, but for his failure to object, the outcome of the trial would have been different.

(c) The defendant contends the trial court erred while charging the jury on similar transaction evidence, and that his counsel was ineffective by failing to object. During the charge of the court, the judge told the jury the similar transaction evidence was to show bent of mind and course of conduct. However, the trial court quickly clarified the instruction, stating that the similar transaction evidence "may be considered for the limited purpose of showing . . . the course of conduct and modus operandi in the crimes charged in the case now at trial. Such evidence, if any, may not be considered by you for any other purpose."

In *Moore v. State*, 301 Ga. App. 220 (687 SE2d 259) (2009), we held that a trial court's mere slip of the tongue during a jury charge, quickly corrected, "affords no basis for reversal." Id. at 223 (1). Likewise, here the trial court corrected itself shortly after its initial, expanded charge, reminding the jury of the limited role the similar transaction evidence was to play in determining the defendant's guilt or innocence.

10

Moreover, the record shows that *immediately* before the State presented the similar transaction evidence at trial, the court gave a correct, comprehensive limiting instruction to the jury. During that instruction, the court *twice* referred to the only permissible purposes for the similar transaction evidence as being course of conduct and modus operandi. See id. at 225 (4) (finding no harmful error arising from the court's slip of the tongue during a similar transaction jury charge, when the court quickly corrected itself and when it also gave a separate, correct instruction when the similar transaction evidence was presented). Consequently, pretermitting whether counsel's representation was deficient for failing to object to the charges, we conclude that the failure to object was harmless under the circumstances presented.

*Judgment affirmed. Phipps, P.J., and Dillard, J., concur.*