## A01A1594. MACK v. THE STATE.
(554 SE2d 542)

MILLER, Judge.

James Mack III was convicted of hijacking a motor vehicle, kidnapping, possession of a firearm during the commission of certain crimes, possession of a firearm by a convicted felon, theft by bringing stolen property into the state, and armed robbery. Mack appeals, claiming that the trial court erred in (1) denying his motion to suppress, (2) admitting improper character evidence, and (3) allowing an in-court identification by the victim following an improper photographic lineup. He also claims ineffective assistance of counsel. For the reasons that follow, we affirm.

On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict.[1] So viewed, the evidence showed that Robert Webster stayed overnight at a hotel in Cordele. When he was walking to his car the next morning, someone struck him on the head from behind. Threatening him with a gun, his assailant told him to get into his car and then to move over to the passenger's seat. The man took Webster's keys and drove his car onto the highway. He told Webster to put his head down between his knees and then to look away from him out the passenger window. Webster turned toward the assailant and noticed that he kept a gun in his lap while driving. The driver pulled the car off the road and ordered Webster out of the car. As Webster began to exit, the man pointed his gun at Webster, so Webster grabbed it, and the two struggled for the weapon. Webster was beaten over the head, but managed to take the gun and throw it out of the car. Webster lost conscious-

---

ness, and his assailant took his wallet and drove off with his car.

Later that same day, security officers at the Regency Square Mall in Jacksonville, Florida, were alerted regarding a credit card purchase by two young men. The officers went to the store, where the manager informed them that the signature on a credit card and the signature of the young man presenting the card did not match; when the manager asked for identification, the young man said he had no identification, snatched the card back, and left with the merchandise. The officers located the men, one of whom was Mack, and asked if they would accompany them back to the store to clear up the problem with the credit card. They returned to the store, where the officer asked Mack if he had a wallet and Mack denied having one, although the officer could see a wallet in Mack's back pocket. The officer then handcuffed Mack and examined the wallet, which belonged to Webster. Shortly thereafter, the manager confirmed that the credit card had been reported stolen. At trial Webster identified Mack as the man who had assaulted him and taken his car and wallet.

1. Mack argues that he was arrested without probable cause in Jacksonville, Florida, and that the evidence flowing from the search of his person incident to that arrest was tainted. He moved to suppress the evidence on these grounds, which was denied.

The crucial evidence from this search was the wallet, containing a driver's license, check, and credit card, all in Webster's name. In response to the State's tender of this wallet at trial, defense counsel stated, "Your Honor, we do want the record to reflect that [the wallet] is admitted with no objection. . . ." "[F]ailing to object at trial is not a waiver of the motion to suppress grounds, but affirmatively stating there is no objection in effect concedes the point."[2] Mack's counsel waived objection to the introduction of Webster's wallet into evidence.

The trial court properly admitted the other evidence stemming from Mack's arrest in Jacksonville, because the arrest was made with probable cause. The officers knew the following at the time Mack was handcuffed and searched: (1) the store manager believed that Mack's signature did not match the signature on the back of the credit card, (2) when asked for identification, Mack grabbed the credit card back from the store manager and left with the merchandise, and (3) Mack denied having a wallet, although the officer could see this was an untrue statement. The arresting officers had sufficient trustworthy information to cause a prudent person to believe Mack had committed credit card fraud.[3]

2. The State introduced evidence showing that Mack stayed at

---

[2] (Punctuation and emphasis omitted.) *Carter v. State*, 238 Ga. App. 708, 709 (1) (520 SE2d 15) (1999), quoting *Dyer v. State*, 233 Ga. App. 770, 771 (505 SE2d 71) (1998).

[3] Cf. *Callaway v. State*, 257 Ga. 12, 13-14 (2) (354 SE2d 118) (1987).

the same hotel as the victim through testimony showing that a thumb print taken from a remote control at the hotel matched the print on Mack's fingerprint card. Mack argues that the trial court erred in admitting the fingerprint card into evidence because it contained harmful character evidence that was not redacted. More specifically, he notes that the card, although containing a list of charges for which Mack was on trial, also listed "aggravated assault," which was not a charge presented to the jury.

The fingerprint card was not part of Mack's motion to suppress, and at trial the only basis for objection of its introduction into evidence was lack of foundation. No objection was made on the basis of impermissible introduction of character evidence. "If counsel desires to preserve an objection upon a specific point, the objection must be on that specific ground. Otherwise, this court will not consider it."[4] Mack failed to preserve an objection to the introduction of the fingerprint card on the basis of improper introduction of character evidence.

3. Mack claims that the trial court erred in allowing Webster to identify him in court as his attacker. He argues that Webster's identification was tainted by an improperly suggestive photographic lineup. This objection was also made in his motion to suppress. The State responds that Mack objected at trial to the introduction of the photographic lineup card on the basis of foundation and cannot now argue that it was impermissibly suggestive.

The general rule is that counsel need not renew an objection at trial with respect to evidence that was the subject of a motion to suppress in order to preserve the issue for appeal.[5] Mack's counsel did not affirmatively waive objection to the introduction of the photographic lineup as he did with respect to the victim's wallet. *Werner v. State*,[6] which the State relies on, is not applicable because the court declined to rule on the defendant's motion in limine and instructed the defendant to object at the appropriate time at trial. We may consider Mack's claim that the photographic lineup was improper and fatally tainted the victim's in-court identification of Mack as his attacker.

Nevertheless, we hold that this claim is without merit. "Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly sug-

---

[4] (Citations and punctuation omitted.) *Williams v. State*, 191 Ga. App. 217, 218 (2) (381 SE2d 399) (1989).

[5] See *Kilgore v. State*, 247 Ga. 70 (274 SE2d 332) (1981).

[6] 246 Ga. App. 677 (538 SE2d 168) (2000).

gestive as to give rise to a very substantial likelihood of irreparable misidentification."[7]

Mack argues that the lineup was impermissibly suggestive because his clothing and the background of the photograph distinguished him from the other choices. However, Webster testified that he had the chance to directly and closely observe his attacker. Webster also testified that he did not base his in-court identification on the photographic lineup. Even if we were to assume that the photographic lineup was impermissibly suggestive, given the evidence of an independent basis for Webster's in-court identification, it was within the discretion of the trial court to allow the in-court identification testimony.[8]

4. Mack claims his trial counsel was ineffective because he failed to request a directed verdict at the close of the State's case and at the end of the evidentiary phase of the trial. He maintains that this prevented appellate review of the sufficiency of the evidence to convict him. Of course, "a challenge to the sufficiency of the evidence[ ] need not be preserved or raised by trial counsel,"[9] for by statute such is automatically preserved as grounds for appeal.[10]

We also note that Mack had new counsel at his motion for new trial, who stated that he had reviewed the transcript and saw no basis for a claim of ineffective assistance of counsel. Mack agreed with this conclusion. A claim of ineffective assistance of counsel must be raised before appeal if the opportunity to do so is available, and failure to seize the opportunity is a procedural bar to raising the issue at a later time.[11] In any case, the evidence was sufficient for a rational trier of fact to find Mack guilty beyond a reasonable doubt of the crimes for which he was convicted.[12]

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 28, 2001.

*Bruce S. Harvey, David S. West,* for appellant.

---

[7] (Footnote omitted.) *Jackson v. State*, 243 Ga. App. 289, 293 (3) (h) (531 SE2d 747) (2000).

[8] *Armstrong v. State*, 264 Ga. 505 (2) (448 SE2d 361) (1994); *Baxter v. State*, 254 Ga. 538, 545 (11) (331 SE2d 561) (1985).

[9] *Holder v. State*, 242 Ga. App. 479, 484 (8), n. 2 (529 SE2d 907) (2000).

[10] OCGA § 5-6-36 (a); see *California Fed. Sav. &c. Assn. v. Hudson*, 185 Ga. App. 384, 386-387 (2) (364 SE2d 582) (1987).

[11] See *Wilcox v. State*, 236 Ga. App. 235, 239 (4) (511 SE2d 597) (1999).

[12] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney*, for appellee.