**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 2, 2012**

# In the Court of Appeals of Georgia

A12A0839. CHAPMAN v. THE STATE.                    DO-031 C

DOYLE, Presiding Judge.

Following a jury trial, William Kenny Chapman, II appeals from his conviction of attempted burglary[1] and attempted rape.[2] Chapman contends that (1) he received ineffective assistance of counsel because trial counsel (a) failed to file a demurrer to the defective indictment, (b) failed to move for a directed verdict, (c) failed to request jury instructions on lesser included offenses, and (d) opened the door to damaging character evidence. Chapman also argues that (2) the evidence was insufficient to support the guilty verdict, (3) the trial court inappropriately commented on the

---

[1] OCGA § 16-4-1; 16-7-1 (b).

[2] OCGA § 16-4-1; 16-6-1 (a) (1).

evidence, and (3) the trial court erroneously admitted similar transaction evidence. For the reasons that follow, we affirm.

Construed in favor of the verdict,[3] the evidence shows that at around 1:00 or 2:00 a.m., 15-year-old A. R. was going to sleep in her room in a mobile home. She was disturbed by scratching noises at the air conditioning unit mounted in her bedroom window. She screamed for her mother, who came and reassured her that the sound were probably nothing to worry about. A. R. again heard the noise and called her mother, and they looked out the window to see an unknown male at the window. A. R. and her mother fled to the living room, where the mother called the police as she confronted the stranger who was now looking in the living room window.

As the stranger fled, the mother described his appearance to the police, who responded to scene and discovered Chapman, who matched the description given by the mother. Chapman was arrested, and, police discovered an alcoholic drink, a pornographic magazine, and a pair of women's underwear in his truck.

---

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

Based on these events, Chapman was indicted with attempted burglary and attempted rape.[4] Prior to trial, the State gave notice of its intent to introduce a prior rape conviction as similar transaction evidence, and after a hearing, the trial court ruled that the evidence was admissible. Following a jury trial, Chapman was convicted on both counts, and the trial court denied his motion for new trial, giving rise to this appeal.

1. Chapman argues that the trial court convicted him under a defective indictment as to each count. Because he did not file a timely demurrer to the indictment or a motion in arrest of the judgment, such an argument would normally be waived.[5] Nevertheless, our analysis does not end there because Chapman filed a motion for new trial asserting a claim for ineffective assistance predicated on his trial counsel's failure to file a timely demurrer to the indictment:

> A motion in arrest of judgment or habeas corpus are the only remedies available when no demurrer to the indictment is interposed before judgment is entered on the verdict. Therefore, a motion for new trial is ordinarily not the proper method to attack the sufficiency of the

---

[4] Chapman was initially indicted with attempted child molestation, but he was re-indicted with a substituted charge of attempted rape charge.

[5] See *Kirt v. State*, 309 Ga. App. 227, 232-233 (3) (709 SE2d 840) (2011). See also OCGA §§ 17-7-110, 17-9-61 (b).

3

indictment. But, this Court has made an exception [in cases such as this one] when the motion for new trial raises the ground of ineffective assistance of counsel.[6]

Under *Strickland v. Washington*,[7] to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.[8] If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong.[9] In reviewing the trial court's decision, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[10]

---

[6] (Citations omitted.) *Harris v. State*, 258 Ga. App. 669, 671 (1) (574 SE2d 871) (2002).

[7] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[8] See id. at 687-688, 694 (III) (A)-(B).

[9] See id. at 697 (IV); *Fuller v. State,* 277 Ga. 505, 506 (3) (591 SE2d 782) (2004).

[10] (Punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

4

(a) *Attempted burglary*. Chapman contends that his trial counsel performed deficiently by failing to file a demurrer to the indictment because the indictment failed to adequately allege the crime of attempted burglary. We disagree.

Chapman's indictment charged as follows:

[The grand jurors] do hereby charge and accuse: WILLIAM KENNY CHAPMAN II with the offense of: CRIMINAL ATTEMPT TO COMMIT BURGLARY for that the said accused . . . did then and there, unlawfully: with intent to commit a specific crime, to wit: burglary, perform an act which constitutes a substantial step toward the commission of that crime, to wit: said accused attempted to remove an air conditioning window unit from the window of a residence occupied by to [sic] [K.S.], in violation of OCGA § 16-4-1 and OCGA § 16-7-1, contrary to the laws of this State, the good order, peace, dignity thereof.

"A demurrer to an indictment may be general or special. A general demurrer challenges the very validity of the indictment and may be raised anytime [prior to judgment]; the special objects merely to its form or seeks more information and must be raised before pleading to the indictment."[11] It is well established that the test for determining whether an indictment is sufficient to withstand a *general demurrer* is

---

[11] *State v. Eubanks*, 239 Ga. 483, 485-86 (238 SE2d 38) (1977).

whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. *Thus, if the accused can admit all the indictment . . . charges and still be innocent of having committed any offense, the indictment is . . . defective.*[12]

The crime charged in this case was criminal attempt to conduct a burglary. Under OCGA § 16-4-1, "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." The indictment alleged that Chapman had the intent to commit the specific crime of burglary and that he intentionally tried to remove an air conditioning window unit, which act constituted a substantial step toward commission of the burglary. Therefore, the indictment was not subject to a general demurrer because Chapman could not admit these acts and still be innocent of the crime alleged.[13]

---

[12] (Citation and punctuation omitted; emphasis in original.) *Spence v. State*, 263 Ga. App. 25, 27 (2) (587 SE2d 183) (2003).

[13] See *Livery v. State*, 233 Ga. App. 332, 336 (2) (503 SE2d 914) (1998) (indictment was sufficient because it "clearly stated facts which, if true, constituted a crime in Georgia"). Compare *Dennard v. State*, 243 Ga. App. 868, 873 (1) (b) (534

To the extent that Chapman's trial counsel should have sought greater specificity in the indictment, such an argument would be made in a special demurrer.[14] But this defense fails in the context of Chapman's ineffective assistance of counsel claim, because Chapman cannot demonstrate prejudice. If a timely special demurrer is granted,

> the trial court quashes the indictment. However, the quashing of an indictment merely bars trial on the flawed indictment; it does not bar the State from reindicting the defendant. Thus, even if [Chapman's] attorney had filed a demurrer, it would not have prevented the State from reindicting and trying [Chapman]. And [Chapman] does not argue that the imperfect indictment prejudiced his defense in any way[, instead, he argues that the count was void]. Under these circumstances, [Chapman]

---

SE2d 182) (2000) (indictment for attempt to commit statutory rape was not subject to a general demurrer because it alleged that the defendant arranged a meeting place with the purported victim "for the purpose of engaging in sexual intercourse").

[14] See, e.g., *Stinson v. State*, 279 Ga. 177, 180 (2) (611 SE2d 52) (2005) (seeking greater specificity as to predicate offense of felony murder charge would be done in a special demurrer). See also "A demurrer to an indictment may be general or special. A general demurrer challenges the very validity of the indictment and may be raised anytime; the special objects merely to its form or seeks more information and must be raised before pleading to the indictment." State v. Eubanks, 239 Ga. 483, 485-86 (238 SE2d 38) (1977).

7

has failed to show that he was prejudiced by his attorney's failure to file [a special] demurrer.[15]

(b) *Attempted rape.* In the same context, Chapman contends that his trial counsel was ineffective for failing to demur to the attempted rape count. Chapman argues that the count was deficient because it (i) contained an incorrect Code section, (ii) failed to allege each essential element of rape, and (iii) failed to specify the way in which the rape would be committed. We find no reversible error.

The attempted rape count reads as follows, in relevant part:

> for that the said accused on February 18, 2007 . . . did then and there, unlawfully: with intent to commit a specific crime, to wit: Rape, perform an act which constitutes a substantial step toward the commission of that crime, to wit: said accused attempted to enter the bedroom window of a home occupied by [A.R.] and [K.S.], in violation of OCGA Sec. 16-4-1 [criminal attempt] and OCGA 16-6-4 [child molestation], contrary to the laws of this State, the good order, peace, and dignity thereof.

(i) Chapman is correct that the indictment cites OCGA § 16-6-4, which is the Code section for child molestation instead of rape.

---

[15] (Citation and punctuation omitted). *Cuzzort v. State*, 307 Ga. App. 52, 56-57 (2) (b) (703 SE2d 713) (2010). Accord *Jackson v. State*, ___ Ga. App. ___ (6) (a) (730 S.E.2d 69) (2012); *White v. State*, 312 Ga. App. 421, 429 (3) (a) (718 SE2d 335) (2011).

> It is not the name, but the description of the crime, which characterizes the offense charged. An indictment in which the allegations track the language of the applicable Code section is good as against a general demurrer. An alleged variance between the offense as named or the Code section cited and the allegations specified in the indictment goes only to the form of the indictment.[16]

The form of the indictment may be challenged by a special demurrer, but even if the trial court grants a special demurrer and quashes the indictment, it does not bar the State from re-indicting the defendant.[17] Chapman does not demonstrate a statute of limitations defense or other manner in which requiring the State to re-indict him was reasonably likely to result in a different outcome in this case.[18] Therefore, Chapman has "failed to demonstrate a reasonable likelihood that, but for defense counsel's failure to demur to the [attempted rape charge], the outcome of trial would have differed."[19]

---

[16] (Citation omitted.)

[17] *Cuzzort v. State*, 307 Ga. App. 52, 57 (2) (b) (703 SE2d 713) (2010).

[18] See, e.g., *Clarke v. State*, __ Ga. App. __ (2) (731 SE2d 100) (Case No. A12A0924; decided Aug. 10, 2012).

[19] (Punctuation omitted.) Id.

9

(ii) Chapman's argument that the indictment should have included each element of the rape charge also fails for the reasons explained in Division 1 (a). "Because [Chapman] was charged with criminal attempt, the [S]tate was required to allege that, with an intent to commit the underlying crime, he performed some overt act toward its commission."[20] The indictment alleged that Chapman tried to enter the bedroom window of a residence occupied by the female victim with the intent of committing a rape. Therefore, the indictment did not fail to charge him with a crime, and Chapman cannot show harm by his trial counsel's conduct.

(iii) Chapman also argues that the indictment was fatally flawed because it failed to allege the manner in which the rape would be committed, i.e., against "[a] female forcibly and against her will," or against "[a] female who is less than ten years of age."[21] But as we explained in Division 1 (a), the crime Chapman was charged with was attempted rape under OCGA § 16-4-1. The potential victims, both over the age of ten, were named in the indictment, so he was sufficiently notified of the alleged

---

[20] *State v. Marshall*, 304 Ga. App. 865, 866 (698 SE2d 337) (2010).

[21] OCGA § 16-6-1 (a) (1) & (2).

10

offense. For these reasons, under the facts of this case, Chapman cannot support his ineffective assistance claim on this basis.[22]

(c) Chapman also based his claim for ineffective assistance of counsel on his trial counsel's failure to move for a directed verdict. Nevertheless, "even absent a motion for a directed verdict, a criminal defendant may challenge the sufficiency of the evidence" on appeal, as Chapman does in this appeal.[23] Therefore, he cannot show prejudice by counsel's failure to make such a motion.

(d) Chapman also argues that his trial counsel performed deficiently by failing to request jury instructions on lesser-included offenses. But as explained by his trial counsel at the hearing on his motion for new trial, this decision was a matter of trial strategy. Chapman's strategy was to deny all wrongdoing, and trial counsel wanted to avoid the appearance of admitting to any lesser crimes. Informed strategic decisions "provide no grounds for reversal unless such [strategic] decisions are so patently unreasonable that no competent attorney would have chosen them."[24]

---

[22] See *Driggers v. State*, 295 Ga. App. 711, 717 (4) (a) (673 SE2d 95) (2009).

[23] *Griffith v. State*, 286 Ga. App. 859, 868 (10) (e) (650 SE2d 413) (2007). See also *Mack v. State*, 251 Ga. App. 407, 410 (4) (554 SE2d 542) (2001).

[24] (Punctuation omitted.) *Ellis v. State*, 280 Ga. App. 660, 661 (634 SE2d 833) (2006).

"Because [Chapman's] counsel's decision not to request the lesser-included charge was a reasonable one in light of [his] 'all or nothing' defense strategy, counsel's performance cannot be deemed deficient."[25]

(e) Finally, Chapman claims his trial counsel was deficient by calling a character witness who opened the door to the State's introduction of evidence of his bad character. But again, as explained by trial counsel, the decision to call the witness was made with the knowledge that a similar rape conviction would be admitted regardless and other less serious convictions potentially would be admissible because Chapman insisted that he wished to testify on his own behalf.[26] Therefore, trial counsel made a strategic decision to provide some positive evidence on behalf of Chapman, and any negative consequence would be minimal in light of the damaging evidence he already faced. Such a strategic decision is not a ground for reversal,[27] and

---

[25] (Punctuation omitted.) *Gonzales v. State*, 298 Ga. App. 821, 825-826 (2) (681 SE2d 248) (2009).

[26] See generally OCGA § 24-9-84.1 (a) (2) ("Evidence that the [testifying] defendant has been convicted of a crime shall be admitted [for purposes of impeachment] if the crime was punishable by death or imprisonment of one year or more . . . if the court determines that the probative value of admitting the evidence substantially outweighs its prejudicial effect to the defendant").

[27] See *Fuller v. State*, 278 Ga. 812, 814-815 (2) (c) (607 SE2d 581) (2005) (matters of reasonable trial strategy do not amount to ineffective assistance).

12

the fact that Chapman, in hindsight, now questions the efficacy of the chosen defense strategy cannot establish ineffective assistance.[28]

2. Chapman next challenges the sufficiency of the evidence.

When reviewing the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[29]

As explained in Division 1 (a) and (b), Chapman was accused of attempted rape and attempted burglary. He argues that the evidence was circumstantial and did not exclude every reasonable hypothesis of his innocence.[30] Nevertheless, there was

---

[28] See *Johnson v. State*, 282 Ga. 235, 236 (2) (647 SE2d 48) (2007).

[29] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[30] See OCGA § 24-4-6 ("To warrant a conviction on [entirely] circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt,

direct evidence that Chapman was at the scene and that he matched the description given by the two women who saw him as he interfered with the window air conditioning unit at 2:00 a.m. Chapman's intent was evinced by a prior conviction for rape in which he entered a stranger's house through her window and raped her. The conviction was admitted for the purpose of showing Chapman's intent and bent of mind, and the trial court instructed the jury as to this purpose.

> [T]he question of intent to commit burglary is for the determination of the jury under the facts and circumstances proved, and it is axiomatic that the credibility of the witnesses is solely a jury question. Questions of reasonableness are likewise issues for jury determination. The evidence was sufficient to authorize the jury to conclude that [Chapman] took a substantial step toward entering [the] home to commit a [burglary and a rape].

In light of the record before us, we discern no legal error requiring a reversal.

3. Chapman also claims that the trial court committed clear error by admitting similar transaction evidence. We disagree.

> For evidence of a similar transaction to be admissible, the [S]tate must demonstrate the following: (1) the evidence is admitted for a proper purpose; (2) sufficient evidence exists to establish the accused

but shall exclude every other reasonable hypothesis save that of the guilt of the accused.").

14

committed the independent act; and (3) a sufficient connection or similarity exists between the independent offense and the crime charged so that proof of the former tends to prove the latter. . . We will uphold a trial court's decision to admit evidence of a similar transaction unless it was clearly erroneous.[31]

Here, prior to trial the State gave notice of its intent to introduce a prior rape conviction as a similar transaction. In the prior case, Chapman had admitted to cutting a screen on a window, entering a house through the window, and raping the adult female occupant. Also, there was a pair of women's underwear found at the scene that did not belong to the victim. In the present case, Chapman was accused of attempting to enter a residence through a window to rape an occupant of the residence, and a pair of women's underwear not belonging to the victim was found in Chapman's truck. The trial court admitted the evidence for the purpose of showing intent, lustful disposition, and bent of mind.

> It is well settled, particularly in cases involving sexual offenses, that similar transactions may be admitted for the purpose of establishing bent of mind. Evidence of an earlier assault on a woman is material to the issue of consent or lack thereof and has a direct bearing on a defendant's bent of mind. Such evidence tends to establish that a defendant has such

---

[31] (Footnote and punctuation omitted.) *Pendley v. State*, 308 Ga. App. 821, 824 (2) (709 SE2d 18) (2011).

15

bent of mind as to initiate or continue a sexual encounter without a person's consent.[32]

Based on the record before us, we discern no clear error in the trial court's decision to admit the challenged evidence.[33]

4. Chapman finally enumerates as error that the trial court commented on the evidence in violation of OCGA § 17-8-57, which provides that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." During Chapman's defense, he called a witness with expertise in air conditioning installation to testify that a window air conditioning unit cannot be removed from the outside. The following colloquy ensued:

Q: . . . [C]an you describe . . . how exactly a window unit is installed?

---

[32] (Footnotes omitted.) *Thompson v. State*, 241 Ga. App. 295, 297 (526 SE2d 434) (1999). We note that the new evidence code adopted by the Georgia General Assembly, effective January 1, 2013, eliminates the bent-of-mind and course-of-conduct exceptions to similar-transaction character evidence, but in criminal proceedings in which the defendant is accused of a sexual assault, the new code includes a provision for admission of certain prior sexual assaults or child molestation offenses for bearing on any matters to which they are relevant. See Ga. L. 2011, p. 99, § 2; OCGA § 24-4-413; 24-4-414 (effective Jan. 1, 2013).

[33] See *Wright v. State*, 314 Ga. App. 353, 357 (2) (723 SE2d 737) (2012).

A: They're put in from the inside and they're usually screwed into the window, sealed into the window itself.

Q: Screwed into the window –

Court: Ms. Brown, has he examined this air conditioner in this case?

Counsel: No, sir.

Court: The make and model, has he been given that?

Counsel: No, sir.

Court: Doesn't he kind of need to know that information if he's going to start testifying about what it takes to put in this air conditioner unit instead of perhaps a big commercial unit somewhere or –

Counsel: I was not going to ask him to testify about how this particular unit would have been put in.

Court: Huh?

Counsel: I am not going to ask him to testify about how that particular AC unit was put in.

Court: Then he's not going to testify. We're only concerned about the unit that was in this trailer.

Counsel: Yes, sir. I was simply trying to establish a basis for my further questioning.

Court: Either you're not understanding me or I'm not understanding you. You're asking in general about an air conditioning unit as if in all the world there was one unit and you have to put that one unit in a certain way. I don't believe from my own personal experience that is not true. There's a gamut and a range of units from the smallest that a woman can pick up in one hand all the way to heavy industrial units.

I'm just simply asking you isn't it kind of – don't you even know that before you start asking? I'm really going back to your opening statement and what you considered. It has to be relevant testimony to the issues in the case.

Counsel: Yes, sir.

Court: How would he know what it would take to put in this unit?

Counsel: I wasn't going to ask him what it would take to put in this unit, Your Honor.

Court: That's the only relevance to this jury.

Counsel: Your Honor, the relevance is how the – how a unit could be removed; not how it would be installed.

Court: And without knowing the unit, you contend that he could tell how any unit could be removed. The smallest unit in a flimsy trailer.

Counsel: Your honor . . . if I'd be allowed to ask him the question, he would be able to testify that no AC unit can be removed from outside the window.

State: Objection.

Court: I'm going to ask you jurors to utilize your common sense. An expert witness in order to be an expert has to testify about something that is outside of your knowledge. Is everybody clear on that? Okay. You may proceed.

Q: Now . . . if an AC unit that's installed in a window – if – regardless of what kind of unit it is, could it be removed from the inside? I'm sorry. From the outside of the unit?

A: No, ma'am. They're all installed from the inside so it could not be removed from the outside.

State: Judge, you're still getting back to that he doesn't know this particular unit. He doesn't – he hasn't been tendered as an expert. He hasn't – he's just up there saying that – there's been no foundation laid for this opinion.

Court: You have to lay a foundation first before he ever gets to testify about anything about his opinion. . . Let me excuse the jury for just a second.[34]

Chapman contends that the trial court's statements, including those about his personal experience, indicated his opinion about the credibility of the witness. The transcript reveals, however, that the trial court's focus was the relevance of the witness's testimony and his qualification as an expert. "A trial judge may propound questions to a witness to develop the truth of the case, to clarify testimony, to comment on pertinent evidentiary rules and to exercise its discretion when controlling the conduct of counsel or witnesses in order to enforce its duty to ensure a fair trial to both sides."[35] Under the facts before us, we do not conclude that the trial court expressed its opinion as to what had been proven.

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[34] When the jury was brought back, counsel moved on to a different line of questioning.

[35] *Dickens v. State*, 280 Ga. 320, 324 (3) (627 SE2d 587) (2006).