In the Supreme Court of Georgia

Decided: November 17, 2014

S14A1464. ERVIN BIGHAMS v. THE STATE.
S14A1465. JORDAN CREAR v. THE STATE.

NAHMIAS, Justice.

Ervin Bighams and Jordan Crear appeal their convictions for felony murder, two counts of aggravated assault, and possession of a firearm arising from a shooting that killed Travis Tyson, injured Tony Reeves, and threatened Larry Reeves. We affirm in both cases.[1]

1. (a) Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed the following. On the night of July 2, 2004,

[1] The shooting occurred in the early morning hours of July 3, 2004. On March 29, 2005, a Clinch County grand jury indicted Bighams, Crear, Dwight Riley, and Torrence Edmonds for the felony murder of Tyson, aggravated assault of Tony Reeves and Larry Reeves, and possession of a firearm during the commission of a crime. The charges against Edmonds were dismissed before trial. At a joint trial of the other three defendants from May 30 to June 1, 2007, the trial court granted a directed verdict of acquittal to Riley, but the jury found Bighams and Crear guilty of all charges. The court sentenced Bighams and Crear to serve life in prison for felony murder. Bighams was also sentenced to consecutive terms totaling 25 years on the other convictions; Crear was sentenced to five consecutive years on the firearm conviction and concurrent ten-year terms on the two aggravated assault convictions. Bighams filed a timely motion for new trial, which he amended once after being appointed new counsel. Crear filed a timely motion for new trial, which he amended twice after being appointed new counsel. After holding a hearing on both Appellants' motions, the trial court denied them on February 25, 2014. Each Appellant filed a timely notice of appeal, and the two related cases were docketed in this Court for the September 2014 term and submitted for decision on the briefs.

Crear drove his Toyota Avalanche truck from his home in Kingsland, Georgia, to Homerville, where he picked up his brother-in-law Bighams and Von Cleary, Bighams's friend. The three men drove to a party nearby, but only Cleary went inside the building where the party was taking place. Bighams and Crear stood outside and spoke with Dwight Riley and Torrence Edmonds. While they were talking, Cleary was involved in a fight inside the building and was rushed to the hospital.

Shortly thereafter, Bighams, Crear, Riley, and Edmonds were talking to people outside the building when a Buick sedan driven by Travis Tyson drove down the road in front of them. Believing that Tyson and his gang had attacked Cleary, Riley stopped the Buick, exchanged words with Tyson, and punched him before the car drove off. Bighams, Crear, Riley, and Edmonds then drove in Crear's Avalanche to the hospital where Cleary was being treated.

After visiting Cleary, the four men got back in the truck and continued to drink alcohol and drive around the area, with Crear driving and Riley sitting behind him, and Bighams in the front passenger seat with Edmonds sitting behind him. As they drove around, the men came across the Buick driven by Tyson. Bighams, Crear, and Riley jumped out of the Avalanche and tried to

2

confront the men in the Buick, but the car drove away. Bighams, Crear, and Riley returned to their seats in the truck, and Riley and Edmonds fell asleep in the back seat.

A short while later, the Avalanche came across the Buick once again and began following the car. When the Buick stopped at a stop sign, Crear drove the Avalanche up to the left side of the car, and three shots were fired into the Buick. Two shots hit and killed the driver, Travis Tyson. One shot grazed Tony Reeves, who was sitting in the front passenger seat. Larry Reeves, who was in the back seat, was not hit. The Avalanche fled the scene; the police located it and arrested Bighams and Crear a few hours after the shooting. Riley and Edmonds were arrested separately.

At Appellants' trial, two witnesses who were in a car behind the Avalanche when the shooting took place testified that they saw the Avalanche drive up to the left of the Buick and heard shots fired from the passenger side of the truck, although neither witness could say whether the shots came from the front or rear passenger-side window. Crear, Riley, Edmonds, and Larry Reeves all testified that Bighams fired the gun. Tony Reeves testified that he did not know who the shooter was; in a statement he gave to the police shortly after the

3

shooting, he had claimed that Riley was the shooter. Bighams claimed that Crear handed the gun to Riley, who then shot into the Buick.

Crear admitted at trial that he drove the Avalanche up beside the Buick, but claimed that he did so only because the Buick was lingering at a stop sign and he wanted to pass by. The pistol used in the shooting was owned by Crear, who testified that he had the gun for protection during late-night drives from Georgia to Mississippi, where he used to be stationed in the Navy. Crear said that he had shown Bighams where he kept the gun under the seat, but claimed that he did not ask Bighams or anyone else to use the gun on the night of the shooting.

(b)     Appellants argue that the evidence presented at trial, and in particular the eyewitness testimony relied upon by the State, was not sufficient to support guilty verdicts. Although the eyewitness accounts of the shooting did vary to some extent, "'[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) (citation omitted). When evaluating the legal sufficiency of the evidence, this Court views the evidence in the light most favorable to the jury's verdicts. See Jackson v. Virginia, 443

4

U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). Viewed in this light, and noting that the jury was properly instructed on the law regarding parties to a crime, see OCGA § 16-2-20, the eyewitness testimony and other evidence presented at trial was sufficient to authorize a rational jury to find both Appellants guilty beyond a reasonable doubt of the crimes for which they were convicted. See Jackson, 443 U. S. at 319.

2. Appellants contend that the indictment on which they were prosecuted was void because an elected official served on the grand jury that returned it. At the motion for new trial hearing, the parties stipulated that a member of the Fargo City Council served on the grand jury that indicted Appellants.[2] OCGA § 15-12-60 (b) says that "[a]ny person who holds an elective office in state or local government or who has held such office within a period of two years preceding the time of service as a grand juror shall not be eligible to serve as a grand juror." And under Georgia law, "'the incompetency of one grand juror renders an indictment void, no matter how many unexceptionable jurors join with him in finding the bill.'" State v. Dempsey,

---

[2] According to the Georgia Municipal Association's website, Fargo is a city of about 320 residents in southern Clinch County; it has a mayor and four council members.

290 Ga. 763, 764 (727SE2d670) (2012) (citation omitted).

However, to be cognizable, most attacks on an indictment, including a challenge to the composition of the grand jury that returned it, must be brought within ten days of arraignment, unless the trial court extends that deadline. See OCGA § 17-7-110 ("All pretrial motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court."); Dempsey, 290 Ga. at 765 (holding that § 17-7-110 applies to a motion to quash an indictment based on an elected official's illegal service on the grand jury).[3] Appellants did not challenge the indictment on the ground that the grand jury was illegally constituted until they filed amended motions for new trial more than seven years after the statutory deadline for such a claim.[4] And the trial court did not grant an extension of that deadline.

---

[3] Before § 17-7-110 was enacted in 2003 to establish a ten-day deadline for "[a]ll pretrial motions, including demurrers and special pleas," our case law required a defendant to file a motion to quash before the indictment was returned or show that he was "without actual or constructive knowledge of the illegality of the grand jury's composition." Dempsey, 290 Ga. at 765.

[4] In cases where defendants have waived arraignment, the ten-day period in which defendants must file pretrial motions begins on the date that the waiver of arraignment is filed. See State v. Shabazz, 291 Ga. App. 751, 752 (662 SE2d 828) (2008); Dingler v. State, 281 Ga. App. 721, 723 (637 SE2d 120) (2006). Crear waived arraignment on August 10, 2004 and first raised this challenge in his amended motion for new trial filed on March 28, 2012. The record on appeal does not show an arraignment date or a waiver of arraignment for Bighams, but he does not dispute that his challenge to the grand jury, which was first raised on March 30, 2012, was untimely under § 17-7-110.

Appellants therefore waived their challenge to the indictment based on the composition of the grand jury.

3. Appellants finally contend that their respective trial counsel provided ineffective assistance because they failed to file timely motions to quash the indictment due to the elected official's service on the grand jury. To prevail on this claim, Appellants must show that their trial lawyers' performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to them. See Strickland v. Washington, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984). Appellants have not met this burden.

Even assuming, without deciding, that there was no strategic reason for not filing a timely challenge to the indictment (like the desire not to delay the trial), and thus that trial counsel performed deficiently, Appellants have not shown prejudice. If a timely motion to quash had been filed, the indictment likely would have been dismissed because an elected official served on the grand jury in violation of OCGA § 15-12-60 (b). See Dempsey, 290 Ga. at 765-766. The State would have been free, however, to obtain the identical indictment from a properly constituted grand jury. A dismissal would have been

7

the first in this case, allowing the State to re-indict.  See OCGA § 17-7-53.1 (barring prosecution after *two* indictments charging the same offenses have been quashed).  The State would have faced no imminent deadlines under the statute of limitations for the crimes with which Appellants were charged.  See OCGA § 17-3-1 (a) and (c).  And the State had ample evidence to support the indictment.  Under these circumstances, Appellants cannot show a reasonable probability that, but for the failure of trial counsel to file a timely motion to quash the indictment, the outcome of the trial would have been different.  See, e.g., Chapman v. State, 318 Ga. App.  514, 518 (733 SE2d 848) (2012) (finding no prejudice where the appellant did "not demonstrate a statute of limitations defense or other manner in which requiring the state to re-indict him was reasonably likely to result in a different outcome"); Washington v. State, 298 Ga. App. 105, 106 (679 SE2d 111) (2009) ("[B]ecause a defendant can be re-indicted after the grant of a special demurrer, a failure to file such a demurrer generally will not support a finding of ineffective assistance of counsel.").

Judgment affirmed.  All the Justices concur.