306 Ga. 747
FINAL COPY

S19A0489. MARTIN v. THE STATE.

BENHAM, Justice.

Appellant Deondra Martin was convicted of felony murder and possession of a knife during the commission of a felony in connection with the stabbing death of her husband, Christopher Washington.[1]

---

[1] In January 2014, a Laurens County grand jury indicted Martin for malice murder (Count 1), felony murder predicated on aggravated assault by intentional stabbing (Count 2), felony murder predicated on aggravated assault by creating a reasonable apprehension of a violent injury (Count 3), and possession of a knife during the commission of aggravated assault (Count 4). At a jury trial conducted from May 4 to 8, 2015, Martin was acquitted of malice murder but found guilty on the remaining counts. Martin was sentenced to serve life in prison on Count 2, plus five years of probation on Count 4. The verdict on Count 3 merged for sentencing purposes.

Martin filed a timely motion for new trial on May 29, 2015, which she amended on March 24, 2017. After a hearing on April 28, 2017, the trial court denied the motion (as amended) on August 2, 2017. On August 14, 2017, Martin filed a timely notice of appeal, which she amended on August 31, 2017; the case was docketed to this Court on October 4, 2017, as Case No. S18A0270. However, on October 17, 2017, before any briefs were filed, counsel for Martin filed a motion to withdraw as counsel of record. Subsequently new counsel entered an appearance and moved for a remand so that she could raise claims of ineffective assistance of trial counsel for the first time. On November 27, 2017, this Court granted the motion for remand.

On December 12, 2017, Martin filed a second amended motion for new trial. After a hearing on June 25, 2018, the trial court denied the motion as amended on October 26, 2018. Martin filed a timely notice of appeal on November 8, 2018; the case was docketed to the April 2019 term of this Court and thereafter submitted for a decision on the briefs.

On appeal, Martin contends that the evidence was insufficient to support her convictions, that the trial court erred by excluding evidence of Washington's drug use, and that trial counsel was constitutionally ineffective. Finding no reversible error, we affirm.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed the following. On August 27, 2012, paramedics and sheriff's deputies responded to a call of a person stabbed at a Laurens County residence. Upon arrival, paramedics found Washington lying on a bedroom floor with a stab wound to the chest and in cardiac arrest. Martin, her mother, her sisters, and several children were also at the residence; all were very upset. Paramedics transported Washington to the hospital where he was pronounced dead later that night.

While deputies secured the residence, Martin went into the bathroom. While she was in the bathroom, deputies heard rattling, which they reported to the crime scene investigators. A kitchen knife containing traces of Washington's blood was later recovered from the toilet tank reservoir.

Martin was questioned three times about the incident. First, while in the back of a patrol car at the scene, Martin told investigators that she did not know what had happened in the house but that she and Washington had been fighting. Later that night, during her first formal interview at the police station, Martin said she and the victim merely "had words," but she denied stabbing him. She also told investigators that she and Washington often argued and that those arguments frequently escalated to physical violence. The next morning, Martin told investigators that she and Washington were arguing and that he was choking her. She had a knife in the bedroom, and she picked it up "trying to scare him." She explained that the stabbing was an accident, that she was scared, and that she did not think Washington would die. However, Martin admitted that the victim had stopped choking her before she picked up the knife. Martin was examined at the jail for signs of injury, but none were visible.

The medical examiner testified that Washington's cause of death was a single stab wound to the chest. The wound was five

inches deep, and the medical examiner opined that a significant amount of force would have been required to inflict such a deep wound. Notably, Washington had no defensive wounds.

1. Martin challenges the sufficiency of the evidence to support her conviction for felony murder predicated on aggravated assault by intentional stabbing.[2] "When we review a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict and defer to the jury's assessment of the weight and the credibility of the evidence." *Bowman v. State*, 306 Ga. 97, 99 (1) (829 SE2d 139) (2019), citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Martin argues that the State failed to meet its burden of proving that she was not justified in using deadly force to defend

---

[2] Martin also challenges the sufficiency of the evidence for the count of felony murder predicated on aggravated assault by creating a reasonable apprehension of violent injury. However, because Martin was neither convicted nor sentenced on that count, her claim is moot. See, e.g., *Mills v. State*, 287 Ga. 828, 830 (700 SE2d 544) (2010). Martin does not challenge the sufficiency of the evidence as to her conviction for possession of a knife during the commission of aggravated assault. Nevertheless, our independent review confirms that sufficient evidence supported that conviction. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

4

herself against Washington. According to Martin, the evidence showed only that she "stabbed . . . Washington in self-defense, with the sole intent to get him to stop choking her. He had choked her before, he was choking her again." However, other evidence presented at trial, including Martin's own statement, contradicted her claim of self-defense. Martin told police that Washington had stopped choking her before she stabbed him, and neither Martin's nor Washington's body showed signs of other injuries, as may be expected if the wound were inflicted during a physical struggle. The medical examiner further testified that Washington's lack of defensive wounds indicated that he did not see the knife coming. As we have explained before, "the jury was free to reject any evidence in support of a justification defense and to accept the evidence that the [stabbing] was not done in self-defense." *Gibson v. State*, 300 Ga. 494, 495 n.3 (796 SE2d 712) (2017). Thus, viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Martin was guilty of felony murder.

See *Jackson*, 443 U. S. at 319 (III) (B).

Martin further posits that the trial court abused its discretion by refusing to grant her a new trial on the general grounds, ostensibly arguing that this Court should sit as the thirteenth juror in the trial court's stead. "A motion for new trial on [the general grounds], however, is not properly addressed to this Court[,] as such a decision is one that is solely within the discretion of the trial court." *Smith v. State*, 300 Ga. 532, 534 (1) (796 SE2d 671) (2017). Because the trial court's order reflects that it weighed the evidence and considered the witnesses' credibility and evidentiary conflicts before declining to exercise its discretion as the sole arbiter of the general grounds, we find no abuse of discretion here. See id.

2.  Martin next contends that the trial court violated her Sixth Amendment right to present a full and fair defense by excluding evidence of Washington's drug use and related criminal history. However, the record shows that this claim is being raised for the first time on appeal. Because it is a claim regarding the exclusion of evidence, we may review it for plain error. See OCGA § 24-1-103 (d);

see also *Gates v. State*, 298 Ga. 324, 328-329 (4) (781 SE2d 772) (2016) (plain error review under OCGA § 24-1-103 (d) is available only for challenges to rulings on the admission or exclusion of evidence).

> To show plain error [Martin] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected [her] substantial rights, and the error must have seriously affected the fairness, integrity[,] or public reputation of judicial proceedings. We need not analyze all of the elements of this test when, as in this case, the defendant has failed to establish one of them.

(Citation and punctuation omitted.) *State v. Herrera-Bustamante*, 304 Ga. 259, 264 (2) (b) (818 SE2d 552) (2018).

Before trial, the State moved, pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)"), to exclude evidence of Washington's drug dealing and drug use. At a hearing on the State's motion, defense counsel argued that Martin's knowledge of Washington's drug use and his resultant tendency toward violence was relevant to her state of mind at the time of the incident and to show how drug use affected Washington's personality and led to domestic violence incidents

7

between the two, including the one that led to his death. The trial court granted the State's motion, finding that Martin failed to show a sufficient nexus between Washington's drug use and his stabbing and that such evidence was more prejudicial than probative.

Here, Martin's claim fails because she has not demonstrated that the exclusion of this evidence affected her substantial rights; in other words, she has not demonstrated that such exclusion "likely affected the outcome of the trial court proceedings." *State v. Johnson*, 305 Ga. 237, 240 (824 SE2d 317) (2019). The jury heard testimony from multiple witnesses and from Martin herself that Washington tended toward violence and frequently directed that violence at Martin. Martin's stepfather testified that he witnessed Washington on top of Martin choking her, and Martin's former supervisor testified that Martin arrived at work on several occasions with such extensive facial swelling and bruising that "she was not presentable to be working the shift." Martin likewise testified at length regarding physical and verbal abuse to which Washington subjected her. Whether Washington's drug use exacerbated such

8

violence would be of marginal value to a jury already fully aware that Washington was, in Martin's words, "a habitual wife-beater." Accordingly, Martin has not shown plain error.[3]

3. Martin contends that her trial counsel rendered ineffective assistance in two respects. We disagree.

To prevail on a claim of ineffective assistance of this type, a defendant must show both that her trial counsel's performance was deficient and that, absent that deficient performance, a reasonable probability exists that the proceeding's outcome would have been different. *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). If a defendant fails to satisfy one part of this test, then this Court is not required to consider the other. See *Stripling v. State*, 304 Ga. 131, 138 (3) (b) (816 SE2d 663) (2018).

(a) Turning to her first claim, Martin argues that her trial counsel was ineffective in failing to obtain and use at trial the

---

[3] To the extent Martin raises this claim as one of nonconstitutional trial court error, even assuming error, it was harmless for the reasons discussed above. See *Williams v. State*, 302 Ga. 147, 152 (2) n.5 (805 SE2d 873) (2017) (reasoning that any error in excluding testimony was harmless where such testimony would have been cumulative of other testimony on same point).

9

services of an expert in the field of domestic violence. We are not persuaded.

"Typically, the decision whether to present an expert witness is a matter of trial strategy that, if reasonable, will not sustain a claim of ineffective assistance." *Matthews v. State*, 301 Ga. 286, 289 (2) (800 SE2d 533) (2017). Where a defendant contends a strategic decision constitutes deficient performance, she "must show that no competent attorney, under similar circumstances, would have made it." (Citation and punctuation omitted.) *Sullivan v. State*, 301 Ga. 37, 40 (2) (a) (799 SE2d 163) (2017).

At the hearing on Martin's motion for new trial, her trial counsel testified that he did not believe it advisable to employ an expert witness to evaluate Martin and to testify concerning battered person syndrome or other psychiatric disorders because Martin's history was replete with violent tendencies. Some of that history arose between Martin and Washington; some arose between Martin and other women but concerned Washington; but other history, which was of foremost concern to trial counsel, "predated [Martin's]

relationship with [Washington]," "had nothing to do with him," and made Martin "look really bad." As trial counsel recognized, an expert would have used battered person syndrome to explain, at least in part, Martin's violent reaction on the night in question. As counsel testified:

> [I]f an expert had come on to testify that the only reason and the primary force of Deondra Martin being violent with her husband *was her husband*, and then that expert was faced with cross-examination with Ms. Martin being violent towards others, to include stopping a school bus and assaulting young girls at an early age, that trade-off wasn't worth it.

(Emphasis supplied.) Trial counsel's strategic decision was not unreasonable. Though extrinsic acts evidence and character evidence is generally inadmissible, an expert's testimony attributing Martin's violent response to her history with Washington could have opened the door to the State's adducing rebuttal evidence that trial counsel sought to have excluded. See generally *Timmons v. State*, 302 Ga. 464, 470 (2) (a) (807 SE2d 363) (2017) ("Under OCGA § 24-4-404 (a), the accused may certainly open the door to the State's introduction of character evidence — evidence of his own character,

11

or that of the victim . . . ."). Cf. *Strother v. State*, 305 Ga. 838, 846 (4) (c) (828 SE2d 327) (2019) ("[I]nadmissible extrinsic evidence is admissible on redirect examination as rebuttal evidence, when defense counsel has opened the door to such evidence during cross-examination." (citation and punctuation omitted)); *United States v. Holman*, 680 F2d 1340, 1349 (II) (B) (11th Cir. 1982) (evidence of prior bad acts admissible to rebut defense theory of duress). See also *Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004) (concluding under old Evidence Code that trial counsel's strategic decision "not to call [an expert in battered person syndrome] for fear of opening the door" to evidence that defendant was the aggressor in the relationship was reasonable).

Moreover, Martin's argument that trial counsel performed deficiently because there was "no downside to consulting with an expert as to the psychological effects [Washington's] repeated abuse" had on Martin is unpersuasive. "[D]eficiency cannot be demonstrated by merely arguing that there is another, or even a better, way for counsel to have performed." *Davis v. State*, 306 Ga.

140, 144 (3) (829 SE2d 321) (2019). Trial counsel's extensive testimony on the subject indicates that he carefully considered the value an expert witness would bring to Martin's defense and concluded that the testimony offered by such an expert would ultimately militate against his theory of self-defense. Under these circumstances, we cannot say that trial counsel's strategy was unreasonable. Therefore, this claim is without merit.[4]

(b) Finally, in an argument hinged on tenuous suppositions as to the course of events that would have followed, Martin posits that her trial counsel was ineffective for failing to demur to the fatally flawed felony murder counts in the indictment.[5] We have previously addressed and rejected a similar argument.

---

[4] In a related enumeration, Martin argues that the trial court erred in denying her motion for funds to secure an expert in the field of domestic abuse to perform a full evaluation of Martin, which was made at the motion for new trial stage. Martin argues that the funds were essential to her post-trial proceedings and appeal to show that she was prejudiced by trial counsel's failure to hire an expert witness. However, because we have determined that trial counsel was not deficient in electing not to hire an expert, any issue related to prejudice is moot. See *Stripling*, 304 Ga. at 138 (3) (b) ("We need not review both elements of [the *Strickland*] test if the appellant fails to prove one of them.").

[5] Specifically, the counts failed to allege that Martin caused the death of Washington.

13

In *Bighams v. State*, 296 Ga. 267, 270 (3) (765 SE2d 917)

(2014), we explained:

> A dismissal would have been the first in this case, allowing the State to re-indict. See OCGA § 17-7-53.1 (barring prosecution after two indictments charging the same offenses have been quashed). The State would have faced no imminent deadlines under the statute of limitations for the crimes with which Appellants were charged. See OCGA § 17-3-1 (a) and (c). And the State had ample evidence to support the indictment. Under these circumstances, Appellants cannot show a reasonable probability that, but for the failure of trial counsel to file a timely motion to quash the indictment, the outcome of the trial would have been different. See, e.g., *Chapman v. State*, 318 Ga. App. 514, 518 (733 SE2d 848) (2012) (finding no prejudice where the appellant did "not demonstrate a statute of limitations defense or other manner in which requiring the state to re-indict him was reasonably likely to result in a different outcome"); *Washington v. State*, 298 Ga. App. 105, 106 (679 SE2d 111) (2009) ("[B]ecause a defendant can be re-indicted after the grant of a special demurrer, a failure to file such a demurrer generally will not support a finding of ineffective assistance of counsel.").

(Emphasis omitted.) The same reasoning applies here. Martin has

not demonstrated prejudice because she has failed to show that the

State would not have simply re-indicted her after dismissal of the

original indictment. Thus, this claim also fails.

14

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 9, 2019.
Murder. Laurens Superior Court. Before Judge Flanders, Senior Judge.

*Hogue, Hogue, Fitzgerald & Griffin, Laura D. Hogue*, for appellant.

*L. Craig Fraser, District Attorney, Kelli M. Adams, Jason M. Rea, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.