**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 10, 2013**

# In the Court of Appeals of Georgia

A13A0370. ADAMS v. THE STATE.

RAY, Judge.

After a jury trial, Robert Louis Adams was convicted of burglary (OCGA § 16-7-1). He appeals from the denial of his motion for new trial, arguing that he received ineffective assistance of counsel. Finding no reversible error, we affirm.

On appeal from a criminal conviction, we construe the evidence in a light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of the innocence. *Bryan v. State*, 271 Ga. App. 60 (1) (608 SE2d 648) (2004). We do not weigh the evidence or determine witness credibility, but determine only whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); *Bryan,* supra. So viewed, the record reveals the following relevant facts:

On November 10, 2010, Jessica Bentley arrived in the parking lot in front of her apartment at the Wesley St. Claire Apartments. Bentley stated that when she arrived, she waited for another neighbor to arrive before exiting her car because she "saw a strange guy lingering in the parking lot." Once inside her apartment, Bentley told her boyfriend, Christopher Gillings, about the man in the parking lot.

Soon after, Bentley and Gillings heard a loud bang outside their apartment door. Gillings testified that he grabbed his handgun because the apartment was located in a "bad area" and he had been the victim of a break-in in the past. While holding the gun, he looked out his door and noticed that the door to the apartment located across the hall from his apartment had been kicked in. When he exited his apartment, Gillings saw two men who he knew did not live in the apartment come through the broken door, carrying bags away. Gillings ordered the men to stop. The men did not stop, and Gillings noticed the heavier-set of the two men reach into his pocket and pull out something Gillings believed was a gun. Gillings then fired one shot, which struck the thinner of the two men, Adams, in the left leg. The heavier-set man fled downstairs.

After calling 911, Gillings brought Adams some water and a towel while waiting for the police to arrive. During that time, Adams told Gillings that the

apartment he had fled from was his "baby mother's house." Bentley testified at trial that Adams was the man that she had noticed lingering in the parking lot. She further testified that she had later spoken to the residents of the burglarized apartment, Kisma Burton and Latoya Robinson, and confirmed that no children nor mothers of any children lived in their apartment. Both Burton and Robinson testified at the trial that they were not home at the time of the burglary, that they did not know Adams or his companion, that they had never invited either of the men to their home, and that they did not have children or a relationship with Adams and his companion. Robinson testified that when she returned to the apartment, she discovered that she was missing a piggy bank, a duffle bag with other bags inside it, some jewelry, and a school backpack.

Adams' recorded statement to the police was played to the jury. However, Adams did not testify at trial and presented no evidence in support of his defense.

1. As an initial matter, we note that Adams has propounded compound enumerations of error, and in some instances, has failed to provide citations to the record or to relevant legal authority. Our requirements for appellate briefs

3

were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court; a party will not be granted relief should we err in deciphering a brief which fails to adhere to the required form.

(Footnote omitted.) *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. 704, 706 (1) (618 SE2d 621) ( 2005). Further, "this Court will not cull the record in search of error on behalf of a party. Accordingly, if we have missed something in the record or misconstrued an argument, the responsibility rests with counsel." *Burrowes v. State*, 296 Ga. App. 629, 631 (1) (675 SE2d 518) (2009).

2. Adams contends that his trial counsel was ineffective for a number of reasons.

When inadequate representation is alleged, the critical factual inquiry ordinarily relates to whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; and whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choices of trial tactics and strategy. Generally, the burden is on the defendant claiming ineffectiveness of counsel to establish (1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

4

(Citations, punctuation and emphasis omitted.) *Johnson v. State*, 214 Ga. App. 77-78 (1) (447 SE2d 74) (1994). "The likelihood of a different result must be substantial, not just conceivable." (Citation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012). Further "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citations and punctuation omitted.) *Boynton v. State*, 317 Ga. App. 446, 450 (2) (730 SE2d 738) (2012).

(a) At the outset, we note that Adams has made assertions regarding his trial counsel's ability to provide adequate representation: namely, that his trial counsel was 91 years old, that he drank an alcoholic beverage during lunch each day of his three-day trial, and that he was so ill and hard of hearing that he could not effectively advocate for him at trial. However, Adams did not specifically enumerate these issues as error, and he cites to no legal authority supporting his argument in his brief. Thus any claim of error arising from these issues has been deemed abandoned. See Court of Appeals Rule 25 (c). Further, we note that even if properly enumerated, we would be constrained to find that the trial court did not abuse its discretion in denying the motion for new trial on this ground. The trial court noted in its order denying Adams' motion for new trial that

5

[a]t first blush, this case seems destined for a new trial. . . . However, upon consideration, the [c]ourt does not find that a new trial is warranted in this case. Defendant's trial attorney vigorously and thoroughly cross-examined the State's witnesses and numerous photographs were placed in evidence during the trial. Defendant's trial attorney never appeared to be impaired during or not participating in the proceedings. While Defendant's trial attorney was certainly hard of hearing, [he] never hesitated to advise the [c]ourt when he could not hear and, with the [c]ourt's permission, spent much of the trial standing next to the witness stand to make sure that he did not miss any of the proceedings.

This Court gives deference to the factual findings of the trial court, which are to be upheld unless they are clearly erroneous. *Dulcio v. State*, 292 Ga. 645, 650 (3) (740 SE2d 574) (2013). Because Adams did not properly enumerate these issues as error, and because there is some evidence in the record to support the trial court's finding, we find that no reversible error exists on these grounds.

(b)     Without citing to any pertinent legal authority, Adams contends that his trial counsel was ineffective for failing to properly cross-examine Gillings. We discern no error.

Adams first argues that his trial counsel did not adequately cross-examine Gillings with regard to supposedly inconsistent statements he made regarding the

6

crime scene. Specifically, Adams notes that Gillings explained that his apartment was "directly across" from the burglarized apartment, when his apartment was really *diagonally* across from the apartment. Adams further contends that his trial counsel should have cross-examined Gillings regarding his testimony that he shot at the men because he saw the heavier-set man reach for his gun as he descended the back staircase of the apartment breezeway. Adams argues that because of the layout of the apartment's breezeway, it would be impossible for Gillings, who was positioned at the front stairway, to see the waist of anyone located on the rear stairway when he noticed the gun being drawn, unless that person were walking backwards. Adams speculates that additional cross-examination as to these issues would have tended to make Gillings less credible to the jury.

Adams further argues that his trial counsel was ineffective for failing to cross-examine Gillings regarding statements he made during his taped police interview that were inconsistent with his testimony at trial, namely his description of the attire of the two perpetrators and Adams' explanation to him regarding his presence in the breezeway.

At the motion for new trial hearing, trial counsel testified that his primary focus in the trial was to attack Gillings' credibility and his perception of the events.

7

Although at the motion for new trial hearing trial counsel consistently stated that he did not remember what questions he asked Gillings or why he chose to ask the questions he did, a thorough review of the trial transcript reveals that Adams' attorney conducted an adequate cross-examination of Gillings. During his cross-examination of Gillings, Adams' trial counsel brought out several statements that Gillings had made during his taped police interview that were inconsistent with his trial testimony. "The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Footnote omitted.) *Simpson v. State*, 277 Ga. 356, 359 (4) (b) (589 SE2d 90) (2003). Although Adams contends that a more thorough cross-examination of Gillings would have revealed more inconsistencies in his testimony that would tend to make him, as the sole witness to the shooting, less credible, "[t]he test regarding effective assistance of counsel is to be not errorless counsel, and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance." (Citation and punctuation omitted.) *Smith v. State*, 309 Ga. App. 241, 247 (3) (b) (709 SE2d 823) (2011). Applying this test, we cannot say that the trial court abused its discretion in denying a new trial on this ground.

8

(c) Adams next contends, in the same compound enumeration of error, that his trial counsel rendered ineffective assistance by failing to conduct an adequate cross-examination of the occupants of the apartment, Burton and Robinson. Adams argues that a more thorough cross-examination of the women would have revealed "helpful" information regarding the size and weight of items stolen from their home that could have demonstrated that it would have been difficult for the second perpetrator to carry away the stolen items *and* to reach for a gun at the same time. Although trial counsel did not cross-examine Burton, her testimony at trial revealed that she never reported any missing belongings to the police. Despite Adams' contentions, his trial counsel did elect to cross-examine Robinson about the items stolen and why she failed to make an immediate report of stolen items to the police. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Lawrence v. State*, 274 Ga. 794, 795 (3) (560 SE2d 17) (2002). Furthermore, "[d]ecisions about what questions to ask on cross-examination are quintessential trial strategy." (Citation omitted.) *Payne v. State*, 289 Ga. 691, 697 (3) (b) (715 SE2d 104) (2011). In light of the fact that trial counsel did, in fact, cross-examine Robinson regarding the items stolen, and that Burton testified that nothing of hers had been stolen, we find no error.

(d) Without providing any citations to any relevant legal authority, Adams argues that his trial counsel was ineffective because "he delegated the responsibility of choosing the jurors during jury selection" to Adams. Voir dire in this case was not transcribed, such that the only evidence of what transpired came from testimony at the hearing on Adams' motion for new trial.[1] At the motion hearing, Adams' trial counsel testified that he conferred with Adams when deciding whether to strike each juror. He testified that he did so because Adams "has a higher right to determine which ones should stay and which ones should go, and I delegate that responsibility to him, and if he is neutral, then I step in."

Even if we assume that trial counsel's conduct in this regard constitutes ineffective assistance of counsel, Adams has not shown by the record that "but for such deficiency, there is a reasonable probability that the outcome of [his] trial would have been different." (Citation omitted.) *Waits v. State*, 282 Ga. 1, 5 (4) (644 SE2d

---

[1] We note that failing to request that voir dire be reported is not error. Although objections and rulings thereon made during jury selection are required to be reported and made part of the trial record, there is no requirement that the entire jury selection be reported and made part of the record in a non-death-penalty felony case. *State v. Graham*, 246 Ga. 341, 342-343 (271 SE2d 627) (1980). See OCGA § 5-6-41 (d). Trial counsel may request that the entire jury selection process be reported and made part of the record, but it is within the broad range of professional conduct and no basis for an ineffective assistance claim if counsel does not do so in a non-death-penalty case. *Dunlap v. State*, 291 Ga. 51, 53 (3) (727 SE2d 468) (2012).

127) (2007). See *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012) ("The likelihood of a different result must be substantial, not just conceivable") (citation omitted). Adams does not assert that anything harmful or prejudicial transpired during voir dire, and he does not claim that, had he been fully assisted by his trial counsel in striking jurors, the outcome of his trial would have been different. Accordingly, Adams' "speculation that error may have occurred [during jury selection] is insufficient to show any . . . prejudice. . . and is insufficient to show any reversible error." (Citation and punctuation omitted.) *Brinkley v. State*, 320 Ga. App. 275, 280 (4) (739 SE2d 703) (2013). Further, because there is no transcript of the voir dire or the jury selection process in the appellate record, "we must assume that the ruling of the trial court is supported by the evidence." (Punctuation and footnote omitted.) *Code v. State*, 255 Ga. App. 432, 433 (2) (565 SE2d 477) (2002). Accordingly, we find no error.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*