**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 1, 2020**

# In the Court of Appeals of Georgia

A20A0969. WILSON v. GUY.

DILLARD, Presiding Judge.

Robert Wilson appeals the trial court's denial of his motion for summary judgment in Hunter Guy's action against him. Specifically, Guy alleges that Wilson's negligence was the proximate cause of injuries he suffered while working with V. J. Williamson on Wilson's property. Wilson disagrees, arguing that he is entitled to summary judgment because the doctrines of contributory negligence and assumption of the risk barred Guy's claims. Wilson further contends that any negligence on Williamson's part cannot be imputed to him and the trial court erred in denying summary judgment as to the issue of punitive damages. For the reasons set forth *infra*, we reverse.

Viewing the evidence in the light most favorable to Guy (*i.e.*, the nonmoving party),[1] the record shows that Wilson owns and operates Robert F. Wilson Builders, Inc., which is a construction, framing, and remodeling business. During all relevant times, Guy and Williamson were employees of Wilson's company, and they worked there Monday through Friday. But occasionally, Wilson offered his employees the opportunity to earn extra money by performing tasks at his residence on the weekends, which was "completely separate" from their work for the company and done solely for Wilson's personal benefit. This work included mowing the lawn, landscaping, cleaning the dog pen, yard work, and other property-maintenance tasks.

In early May 2018, Williamson asked Wilson if he could work at his residence on May 5, 2018 (a Saturday), and be paid in advance. Wilson agreed, and paid Williamson $100 in cash. The day before the scheduled job, Williamson asked Guy if he wanted to help with the work at Wilson's residence to make some extra money, and Guy accepted the offer. According to Guy, Wilson knew that he would be working with Williamson and paid him $100 for doing so.[2]

---

[1] *See*, *e.g.*, *Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 696 (730 SE2d 164) (2012).

[2] According to Wilson, he did not know Guy was planning to work with Williamson that Saturday, he did not pay Guy any money for doing so, and to his

On the day in question, Williamson and Guy arrived at Wilson's home around 7:00 a.m., checked on the dog pen, and then began by mowing the lawn. It is undisputed that Wilson left his residence while Williamson and Guy were working, so he was not home to supervise, monitor, or observe them. And before departing, Wilson told Guy to listen to Williamson and do whatever tasks that he was asked to do. Later, after speaking with Wilson, Williamson informed Guy that Wilson instructed them "to trim the fence and then burn the brush."[3] So, while Williamson trimmed the fence, Guy gathered all of the brush into a pile to be burned.

The five-foot-tall pile of brush was large, containing over 150 logs. And because of the pile's size, Guy stood on logs somewhere in the pile and began "slinging" gasoline on the brush using a cup.[4] Guy stood about a foot away from where he was spreading the gasoline.

_____

knowledge, Guy and Williamson had an agreement among themselves regarding payment. But at the summary-judgment stage, we credit Guy's testimony. *See supra* note 1 & accompanying text.

[3] Guy clarified that by "brush," he meant branches, leaves, and old tree logs.

[4] Guy testified that he was standing in the middle of the pile, but later specified that he was standing on the "first four logs." Guy also testified that he stood on the logs "to get a boost in height." So, while it is undisputed that Guy was standing on logs somewhere *in* the pile of brush while dousing it with gasoline, it is unclear exactly where he stood.

Williamson planned to ignite the fire by lighting a ripped piece of t-shirt and throwing it in the pile of brush. But before he had a chance to do so, the brush "blew up" like "an explosion," forced Guy back off the logs, burned him, and "ripped all [his] skin off." Williamson rushed to find tenants on the property to call 911 (which they did), and eventually, an ambulance took Guy to the closest hospital with a burn unit. And due to the severity of his burns, Guy remained in the hospital for about a week and a half.

Thereafter, Guy filed a complaint for damages against Wilson, claiming that Wilson was negligent for: (1) not supervising the burning of the brush on his property; (2) having gasoline on his property to be used in burning the brush; (3) not training Guy as to the proper use of gasoline to burn brush; and (4) not training Williamson on how to properly use gasoline to burn brush or how to supervise others in doing so. Guy also alleged that Wilson was responsible for the negligent acts of Williamson under the doctrine of *respondeat superior*. According to Guy, he suffered severe permanent physical injuries and financial losses as a direct result of Wilson's negligence. Wilson answered the complaint, raising several affirmative defenses, and discovery then ensued. On March 14, 2019, Wilson filed a motion for summary

4

judgment. Guy filed a response, and ultimately, the trial court denied Wilson's motion.[5] This appeal follows.

Summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[6] Furthermore, a *de novo* standard of review "applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[7] Moreover, at the summary-judgment stage, "[w]e do not resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution."[8] With these guiding principles in mind, we will address Wilson's specific claims of error.

---

[5] Although the record below contains an order scheduling a summary-judgment hearing for June 10, 2019, there is no transcript of that hearing in the appellate record. But because it appears that no evidence was presented at the hearing, the transcript, if one exists, is unnecessary for the resolution of this appeal.

[6] OCGA § 9-11-56 (c); *accord Martin*, 316 Ga. App. at 697.

[7] *Martin*, 316 Ga. App. at 697 (punctuation omitted).

[8] *Tookes v. Murray*, 297 Ga. App. 765, 766 (678 SE2d 209) (2009).

1. Turning to Wilson's last argument first, he contends that he is not vicariously liable for any of Williamson's negligent acts because Williamson was an independent contractor, not an employee. And because we conclude that both Williamson and Guy were working as independent contractors at the time of the brush fire explosion, we agree that Wilson is not liable for Guy's injuries, vicariously or otherwise.

In a cause of action for negligence, the plaintiff bears the burden of establishing four essential elements:

> (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.[9]

And the threshold issue in any cause of action for negligence is whether, and to what extent, the defendant "owes the plaintiff a duty of care."[10] Suffice it to say, whether

---

[9] *Scott v. Forest Acres Full Gospel Church*, 352 Ga. App. 145, 148 (834 SE2d 286) (2019) (punctuation omitted).

[10] *City of Rome v. Jordan*, 263 Ga. 26, 27 (1) (426 SE2d 861) (1993); *accord Diamond v. Dep't of Transp.*, 326 Ga. App. 189, 193-94 (2) (756 SE2d 277) (2014).

6

a duty exists upon which liability can be based is a question of law;[11] and it is a well-settled principle of negligence law that "the occurrence of an unfortunate event is not sufficient to authorize an inference of negligence."[12] Nevertheless, we are mindful that routine issues of negligence cases are "generally not susceptible of summary adjudication, and that summary judgment should not be granted in these cases unless the nonexistence of liability is plain, palpable, and indisputable."[13] This is such a case.

In this matter, Guy's complaint alleged that Wilson was negligent for failing to train him and Williamson on the proper way to use gasoline to burn brush, failing to supervise them while they burned the brush, failing to train Williamson on how to

---

[11] *See City of Rome*, 263 Ga. at 27 (1); *Diamond*, 326 Ga. App. at 194 (2).

[12] *Wolfe v. Carter*, 314 Ga. App. 854, 859 (2) (b) (726 SE2d 122) (2012) (punctuation omitted); *accord Greyhound Lines, Inc. v. Williams,* 290 Ga. App. 450, 451 (1) (659 SE2d 867) (2008); *Head v. Sears Roebuck & Co.*, 233 Ga. App. 344, 345 (503 SE2d 354) (1998).

[13] *Ga. Dep't of Human Res. v. Bulbalia,* 303 Ga. App. 659, 663 (2) (694 SE2d 115) (2010) (punctuation omitted); *see Am. Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 445 (2) (679 SE2d 25) (2009) (reminding "members of the judiciary that the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed" (punctuation omitted)).

supervise the use of gasoline to burn the brush, and having gasoline on the property.

Guy also alleged that Wilson is vicariously liable for Williamson's negligence in directing and supervising the burning of the brush. But to determine whether Wilson had an affirmative duty to take any of these actions or he is vicariously liable for Williamson's negligence, we must first determine whether Guy and Wilson were working as Wilson's employees or as independent contractors at the relevant time.

It is well settled that whether a person is an employee or an independent contractor is determined by "examining whether the employer has assumed the right to control the time, manner, and method of executing the work."[14] And the right to

---

[14] *Williamson v. Coastal Physician Servs. of Se., Inc.*, 251 Ga. App. 667, 668 (554 SE2d 739) (2001); *see Golosh v. Cherokee Cab Co.*, 226 Ga. 636, 637 (176 SE2d 925) (1970) ("The test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." (punctuation omitted)); *Royal v. Ga. Farm Bureau Mut. Ins. Co.*, 333 Ga. App. 881, 883 (777 SE2d 713) (2015) (explaining that to determine whether a person is an employee or an independent contractor, "the test is whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of the execution of the work" (punctuation omitted)); *Cooper v. Olivent*, 271 Ga. App. 563, 564 (1) (610 SE2d 106) (2005) ("It is . . . well settled that the test distinguishing an employee from an independent contractor is whether the employer *assumed the right* to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." (punctuation omitted)

control the manner and method of executing work "means the right to tell the employee how he shall go about doing the job in every detail, including what tools he shall use and what procedures he shall follow."[15] Further, the right to control the time of doing the job "means the right to control the hours of work."[16]

Here, viewing the evidence in light most favorable to Guy,[17] it shows that Wilson orally agreed to pay Williamson and Guy a fixed amount to perform property-maintenance work at his home. But there is no evidence that Wilson assumed the right to tell Williamson or Guy exactly how to go about their tasks in every detail, which tools to use, or what procedures to follow in carrying out their work. Indeed, there is no evidence that Wilson even knew the method by which Guy and

(emphasis supplied)).

[15] *Royal*, 333 Ga. App. at 883 (punctuation omitted); *accord RBF Holding Co. v. Williamson*, 260 Ga. 526, 526 (397 SE2d 440) (1990).

[16] *RBF Holding Co.*, 260 Ga. at 526 (punctuation omitted); *accord Rains v. Dolphin Mortg. Corp.*, 241 Ga. App. 611, 613 (2) (525 SE2d 370) (1999).

[17] Guy's three-page brief cites to only two pages of the record and does not provide any legal authority to support his summary legal conclusions. And while this Court has independently reviewed the record and evidence, to the extent "we have missed something in the record [favorable to Guy] or misconstrued an argument, the responsibility rests with [Guy's] counsel." *Adams v. State*, 322 Ga. App. 782, 784 (1) (746 SE2d 261) (2013) (punctuation omitted); *accord Cawthon v. State*, 350 Ga. App. 741, 743 (830 SE2d 270) (2019).

Williamson planned to set the brush on fire—*i.e.*, Guy standing on logs *in the pile of brush* and dousing them with gasoline from a cup only a foot away. As Guy testified, Wilson merely instructed them as to the *general tasks* to be done, including mowing the lawn, trimming the fence, and burning the brush. Importantly, Wilson was not even home while the two men worked. And according to Guy, Wilson instructed him only to listen to Williamson and do whatever *Williamson* told him to do. Guy also admitted that he was under the "direct supervision" of Williamson, not Wilson. Significantly, Guy never heard Wilson tell Williamson that they should use gasoline to burn the brush. Instead, Guy averred only that he "took [Williamson's] word for it." Needless to say, Williamson's statements in this regard are inadmissible hearsay.[18]

---

[18] *See Langley v. Nat'l Labor Grp., Inc.*, 262 Ga. App. 749, 751-52 (1) (586 SE2d 418) (2003) ("[Testimony that] simply repeat[s] hearsay [is] not based on personal knowledge and ha[s] no probative value. As such, [it is] inadmissible in summary judgment proceedings."); *see also R & G Investments & Holdings, LLC v. Am. Family Ins. Co.*, 337 Ga. App. 588, 595-96 (3) (787 SE2d 765) (2016) ("To be considered by the trial court, affidavits opposing summary judgment must be made on personal knowledge and must set forth such facts as would be admissible in the evidence. All hearsay evidence, unsupported conclusions, and the like, must be stricken or eliminated from consideration in a motion for summary judgment.") (citation and punctuation omitted)); *Holcomb v. Norfolk Southern R. Co.*, 295 Ga. App. 821, 822 (673 SE2d 268) (2009) ("Rules as to the admissibility of evidence are applicable in summary judgment proceedings, since the statute provides that all affidavits, depositions, etc. shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. OCGA § 9-11-56 (e)." (punctuation omitted)). We

Further, while Wilson agreed to the particular Saturday that Williamson requested to work at his home, there is no evidence that Wilson controlled the specific hours during which Williamson and Guy worked or the order in which the requested tasks would be performed. Under such circumstances, although Williamson and Guy were employees of Wilson's business during the week, they worked as independent contractors on the Saturday when Guy was injured.[19]

acknowledge that "on summary judgment[,] a court may consider unobjected-to-hearsay evidence[.]" *Little v. Jim-Lar Corp.*, 352 Ga. App. 764, 767 (2) (835 SE2d 794) (2019). But in the proceedings below, Wilson objected to the admission of Guy's testimony that Wilson told Williamson to use gasoline to start the fire, aptly arguing that it was hearsay and inadmissible for purposes of summary judgment.

[19] *See RBF Holding Co.*, 260 Ga. at 526 (holding that a worker was an independent contractor when he "started and finished jobs at his own schedule; [he] refused jobs when it conflicted with his full-time job or with personal plans such as hunting; [he] used his own tools in performing work for [the company]; and [he] testified unequivocally that as long as he got the work done, [the company] did not care how he did it"); *Allrid v. Emory Univ.*, 249 Ga. 35, 40 (2) (285 SE2d 521) (1982) ("[When] a hospital reserves no right to control specific medical techniques employed by the doctors, but merely exercises a limited surveillance in order to monitor the quality of medical care provided, these controls are not inconsistent with an employer-independent contractor relationship." (punctuation omitted)); *Ward v. DirecTV LLC*, 342 Ga. App. 69, 72 (1) (801 SE2d 110) (2017) (holding that subcontractors who installed satellites were independent contractors when the satellite cable provider "lacked the right to direct or control the time and manner of the installation of the satellite system"); *Anderson v. Med. Ctr., Inc.*, 260 Ga. App. 549, 551 (1) (580 SE2d 633) (2003) (holding that obstetricians were independent contractors for a medical center when the medical center did not control, and had no means to control, the exercise of professional judgment by, or the availability of, the

11

Additionally, Guy has provided no legal authority that an employer has a duty to train and supervise an independent contractor and can be held liable for negligently failing to do so. And this makes perfect sense because the very nature of an employer-independent contractor relationship is that the employer lacks the right to control or direct the way in which the independent contractor performs his or her work. It follows, then, that the employer would have no duty to train the independent contractor in exactly how to perform the work or to provide supervision to ensure the work was performed in a particular way.[20]

---

attending obstetricians); *Rains*, 241 Ga. App. at 614 (2) (holding that the person at issue was an independent contractor when the evidence showed that the employer could not control the way the person performed his work and "[t]he only evidence that [the employer] had the right to control the time, manner, or method of [the independent contractor's] work is that [the employer] provided him with training on how to prepare loan documents").

[20] *See Ga. Osteopathic Hosp., Inc. v. Hollingsworth,* 242 Ga. 522, 522 (250 SE2d 433) (1978) ("The rule is that for the hospital to be held liable it must be shown that the doctor was an employee of the hospital and not an independent contractor."); *Charter Peachford Behavioral Health Sys. v. Kohout*, 233 Ga. App. 452, 462 (f) (504 SE2d 514) (1998) (physical precedent only) (holding that hospital was under no duty to supervise independent contractors); *see also Pendley v. S. Reg'l Health Sys., Inc.,* 307 Ga. App. 82, 85 (1) (a) (704 SE2d 198) (2010) ("The true test of whether the relationship is one of employer-employee or employer-independent contractor is whether the employer, under the contract either oral or written, assumes the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." (punctuation omitted)). Even in the employer-employee context, an employer may be

12

Again, it is undisputed that it was Williamson, not Wilson, who instructed Guy to use gasoline to light the brush on fire. So, even if Williamson was negligent in doing so, the general rule in Georgia is that an employer is not liable for the negligent acts of an independent contractor.[21] Indeed, an individual contractor is expected to "determine for himself whether his place of employment is safe or unsafe, and ordinarily may not recover against the owner for injuries sustained in the performance

held liable for negligent supervision only when "there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." *Leo v. Waffle House, Inc.*, 298 Ga. App. 838, 841 (2) (681 SE2d 258) (2009) (punctuation omitted); *accord Novare Grp., Inc. v. Sarif*, 290 Ga. 186, 190-91 (4) (718 SE2d 304) (2011). Here, there is no evidence that Wilson knew or should have known of Guy and Williamson's "tendencies" to burn brush in any particular way.

[21] *See United States v. Aretz*, 248 Ga. 19, 24 (B) (A) (1)-(2) (280 SE2d 345) (1981) ("The employer of an independent contractor owes the contractor's employees the ubiquitous duty of not imperiling their lives by his own affirmative acts of negligence. It is also the general rule that the independent contractor's employer is under no duty to take affirmative steps to guard or protect the contractor's employees against the consequences of the contractor's negligence or to provide for their safety." (citations omitted)); *Rayburn v. Ga. Power Co.*, 284 Ga. App. 131, 134 (1) (643 SE2d 385) (2007) (same). *Cf. Mullinax v. Pilgrim's Pride Corp.*, 354 Ga. App. 186, 191 (2) (a) (840 SE2d 666) (2020) ("[When] two or more independent contractors, or a general contractor and one or more subcontractors, are engaged in work on the same premises, it is the duty of each contractor, in prosecuting his work, to use ordinary and reasonable care not to cause injuries to the servants of another contractor." (punctuation omitted)).

13

of [his] [work]."[22] Suffice it to say, because Williamson and Guy were independent contractors who created the conditions that resulted in Guy's injuries without any direction from Wilson, Wilson cannot be held liable, vicariously or otherwise, for those injuries.[23]

2. Given our holding in Division 1 *supra*, we need not address whether Guy's claims are barred by the doctrines of contributory negligence or assumption of the risk.

---

[22] *Schuessler v. Bennett*, 287 Ga. App. 880, 884 (1) (652 SE2d 884) (2007) (punctuation omitted); *accord Forest Cove Apartments, LLC v. Wilson*, 333 Ga. App. 731, 735 (776 SE2d 664) (2015); *Carpenter v. Capital City Club*, 299 Ga. App. 265, 267 (683 SE2d 351) (2009).

[23] *See Carnegay v. WalMart Stores, Inc.*, 353 Ga. App. 656, 658 (839 SE2d 176) (2020) ("An employer may be vicariously liable for torts committed by its employees, but such liability does not extend to torts committed by an independent contractor."); *Miller v. City Views at Rosa Burney Park GP, LLC*, 323 Ga. App. 590, 600 (746 SE2d 710) (2013) ("[A]n employer is generally not vicariously liable for the negligence of an employee hired as an independent contractor is not subject to the immediate direction and control of the employer." (punctuation omitted)); *McKee Foods Corp. v. Lawrence,* 310 Ga. App. 122, 124 (712 SE2d 79) (2011) ("Although an employer may be held vicariously liable for the torts of an employee, such liability does not extend to torts committed by an independent contractor."); *supra* notes 21-22 & accompanying text; *see, e.g.*, *Hardnett v. Silvey*, 285 Ga. App. 424, 424, 426-27 (646 SE2d 514) (2007) (holding that homeowner was not liable when independent contractor who was hired to repair the roof on a shed fell from the roof and was injured).

3. Finally, Wilson argues that the trial court erred in denying summary judgment as to Guy's claim for punitive damages. Again, we agree.

Under Georgia law, a plaintiff cannot recover punitive damages when "the underlying tort claim fails."[24] And here, because Guy's negligence claim fails, his claim for punitive damages likewise fails, and Wilson was entitled to summary judgment in this respect as well.

For all these reasons, we reverse the trial court's denial of summary judgment to Wilson.

*Judgment reversed. Rickman and Brown, JJ., concur.*

---

[24] *Lewis v. Meredith Corp.*, 293 Ga. App. 747, 750 (5) (667 SE2d 716) (2008); *accord Bartenfeld v. Chick-fil-A, Inc.*, 346 Ga. App. 759, 769 (5) (815 SE2d 273) (2018).